**UNITED STATES DISCTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WHITE OAK GLOBAL ADVISORS, LLC

                    Plaintiff,

    - against -

THOMAS M. CLARKE, *et al*,

                    Defendants.

Case No. 24-CV-2128-JSR

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**<u>SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

    I.    Background ..................................................................................................2

    II.    Defendants Absolutely and Unconditionally Guaranteed the Navarro Loan
    Agreements and the Fourth A&R Promissory Note ........................................4

    III.    Demand for Payment Was Made ...................................................................7

PROCEDURAL HISTORY ..................................................................................................8

ARGUMENT.......................................................................................................................8

    I.    The Standard for Summary Judgement Pursuant to FRCP 56 and Applicable Law.........9

    II.    Plaintiff Is Entitled to Judgement as a Matter of Law .....................................10

        A.  Plaintiff Proved the Existence of the Guarantees.......................................11

        B.  Plaintiff Has Provided Proof of Default...................................................11

        C.  Plaintiff is Entitled to Pre-Judgement, Post-Judgement, and Cost and Expenses ....13

CONCLUSION....................................................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Anderson v. Liberty Lobby*,
    477 U.S. 242, 248 (1986) ................................................................................................ 9

*Beaufort Cap. Partners LLC v. Oxysure Sys., Inc.*,
    2017 WL 913791, *2 (S.D.N.Y. Mar. 7, 2017) ............................................................. 9

*Boelter v. Hearst Commc'ns, Inc.*,
    192 F. Supp. 3d 427, 443 (S.D.N.Y. 2016) ................................................................ 10

*Breco Equities, LLC v. Whitehead*,
    2023 WL 5180141, *2 (S.D.N.Y. Aug. 11, 2023) ......................................................... 9

*Chemical Bank v. Sepler*,
    457 N.E.2d 289 (N.Y. 1983) ....................................................................................... 11

*Citibank v. Plapinger*,
    485 N.E.2d 974 (N.Y. 1985) ....................................................................................... 11

*Cooperatieve Centrale Raiffeisen-Boerenleenbank, BA, "Rabobank Intl.," NY Branch v. Navarro*,
    36 N.E.3d 80, 84 (N.Y. 2015) .......................................................................... 10, 11, 12

*Davimos v. Halle*,
    826 N.Y.S.2d 61 (N.Y. App. Div. 2006) .................................................................... 10

*Equinox F&B, Inc. v. Roots Pressed Juices LLC*,
    2024 WL 2240230, *14 (S.D.N.Y. May 17, 2024) ..................................................... 13

*Federal Deposit Ins. Corp. v. Schwartz*,
    431 N.E.2d 621 (N.Y. 1981) ....................................................................................... 11

*Federal Deposit Ins. Corp. v. Schwartz*,
    432 N.Y.S.2d 899 (N.Y. App. Div. 1980) .................................................................. 11

*First N.Y. Bank for Bus. v. DeMarco*,
    130 B.R. 650, 654 (S.D.N.Y. 1991) ........................................................................... 11

*Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*,
    84 F.3d 91, 98 (2d Cir. 1996) ..................................................................................... 10

*Schipani v. McLeod*,
    541 F.3d 158, 164, 165 (2d Cir. 2008) ................................................................. 13, 14

*Spodek v. Park Prop. Dev. Assoc.*,
    759 N.E.2d 760, 762 (N.Y. 2001) ................................................................................... 13

*TAP Manutencao e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.*,
    127 F. Supp. 3d 202, 206 (S.D.N.Y. 2015) ................................................................... 10

*UBS AG, London Branch v. Greka Integrated, Inc.*,
    2022 WL 2297904, at *2 (2d Cir. June 27, 2022) ......................................................... 9

*Westinghouse Credit Corp. v. D'Urso*,
    371 F.3d 96, 100 (2d Cir. 2004) ................................................................................... 14

**Statutes**

28 U.S.C. § 1961 ................................................................................................................. 14

28 U.S.C. § 1961(a) ........................................................................................................... 13

**Rules**

C.P.L.R. § 3213 ......................................................................................................... 8, 9, 11

C.P.L.R. § 5001(a) ............................................................................................................. 13

C.P.L.R. § 5001(b) ............................................................................................................. 13

C.P.L.R. § 5004 ................................................................................................................. 13

F.R.C.P. 56 .......................................................................................................................... 1

F.R.C.P. 56(a) ..................................................................................................................... 9

## PRELIMINARY STATEMENT

Plaintiff White Oak Global Advisors, LLC, a Delaware limited liability company, as administrative agent for the various groups of lenders under the loan agreements described below (in such capacities, "White Oak" or "Plaintiff"), seeks summary judgment pursuant to Federal Rule of Civil Procedure 56 against multiple guarantors, each of whom executed and reaffirmed guarantees in favor of White Oak of over $200 million of senior and junior commercial debt. The guarantors, Defendants Thomas M. Clarke ("T. Clarke"), Ana M. Clarke ("A. Clarke"), and David Wiley ("Wiley"), in their individual capacities, and T. Clarke and A. Clarke, in their capacity as trustees for Thomas M. Clarke and Ana M. Clarke 100% JTWROS (collectively, "Defendants" or "Guarantors"), guaranteed the payment of multiple loan facilities and commercial promissory notes in the amount of not less than $239,527,275.60[1], which have matured and are currently due and payable by the Guarantors as described below. Plaintiff seeks entry of a judgment against the Defendants for the guaranteed portion of the outstanding debt.

Each of the credit facilities matured on July 21, 2023, in accordance with their terms, and the obligations thereunder are currently due and payable. Despite maturity and subsequent demands for payment made to the Guarantors, Guarantors have not paid any of the guaranteed amount of $239,527,275.60 due and owing to White Oak, and, consequently, they have breached their obligations under their respective guarantees. As a result of Defendants' breaches, pursuant to F.R.C.P. 56, White Oak submits this memorandum of law, the accompanying Rule 56.1 Statement Of Undisputed Material Facts ("56.1 Statement"), and the accompanying Declaration of Barbara McKee, sworn to on June 6, 2024 ("McKee Decl."), in support of its motion for

---

[1] White Oak reserves all rights to update the amount outstanding on reply to Defendants' opposition.

1

summary judgment and respectfully requests a money judgment in the amount of (i) $20,000,000 against T. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, (ii) $20,000,000 with respect to A. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, and (iii) $20,000,000 with respect to Wiley, which, collectively, represent the outstanding amount Defendants owe White Oak. White Oak is also entitled to an award of accrued and unpaid prejudgment interest at the rate of 9% per annum from the date of maturity, post-judgment interest, costs of suit, and reasonable attorneys' fees, all of which Plaintiff respectfully seeks here.

## STATEMENT OF FACTS

### I. Background

Epic Companies, LLC, a Delaware limited liability company ("Epic"), was a privately held conglomerate with operating subsidiaries that provided heavy lifting, diving and marine, specialty cutting, and well-plugging and abandonment services. *See* Declaration of Kelton C. Tonn in Support of Chapter 11 Petitions and First Day Pleadings, attached to McKee Decl. as Ex. 1; McKee Decl., at ¶ 4; 56.1 Statement, at ¶ 3. White Oak, Epic, and certain of Epic's subsidiaries are currently parties to certain senior loan and security agreements. Under the Amended and Restated Loan and Security Agreement with respect to Navarro Capital Partners, LLC, a Texas limited liability company and a subsidiary of Epic ("Navarro Capital"), Navarro Capital, and certain of its subsidiaries are obligated with respect to (i) a $15,000,000 term loan and (ii) accrued and unpaid interest of $13,556,575.29 (the "Navarro Senior LSA"). *See* Amended and Restated Loan and Security Agreement dated July 22, 2019, attached to McKee Decl. as Ex. 2; *see also* McKee Decl. Ex. 1, at ¶ 28c; McKee Decl., at ¶ 5; 56.1 Statement, at ¶ 4. The Navarro Senior LSA matured on July 21, 2023, *see* McKee Decl. Ex. 2, at pp. 17, 28; McKee Decl., at ¶ 6; 56.1 Statement, at ¶ 5, and the aggregate amount of the outstanding obligations under the Navarro Senior LSA as of October 31, 2023, is $28,556,575.29. *See* McKee Decl., at ¶ 6; 56.1 Statement, at ¶ 5.

2

Acqua Liana Capital Partners, LLC, a Texas limited liability company ("Acqua Liana"), in its capacity as administrative agent and lender under a certain loan agreement, Epic, and certain of Epic's subsidiaries are parties to certain junior loan and security agreements. Under the Third Amended and Restated Loan and Security Agreement with respect to Navarro Capital, Navarro Capital is obligated with respect to (i) a $25,000,000 term loan and (ii) accrued and unpaid interest of $10,340,989.83 (the "Navarro Junior LSA" and, together with the Navarro Senior LSA, each a "Navarro Loan Agreement" and collectively, the "Navarro Loan Agreements"). *See* Third Amended and Restated Loan and Security Agreement dated July 22, 2019, attached to McKee Decl. as Ex. 3; *see also* McKee Decl. Ex. 1, at ¶ 32c; McKee Decl., at ¶ 7; 56.1 Statement, at ¶ 6. The Navarro Junior LSA matured on July 21, 2023, *see* McKee Decl. Ex. 3, at pp. 16, 27; McKee Decl., at ¶ 8; 56.1 Statement, at ¶ 7, and the aggregate amount of the outstanding obligations under such Navarro Junior LSA as of October 31, 2023, is $35,340,989.83. *See* McKee Decl., at ¶ 8; 56.1 Statement, at ¶ 7.

As part of a restructuring transaction, White Oak and Acqua Liana also entered into a promissory note (the "Original Note"), which was subsequently amended and restated on several occasions: the Second Amended and Restated Senior Secured Promissory Note of Acqua Liana Capital Partners, LLC, dated April 5, 2019 (the "Second A&R Promissory Note"); the Third Amended and Restated Senior Secured Promissory Note of Acqua Liana Capital Partners, LLC, dated July 22, 2019 (the "Third A&R Promissory Note"); and the Fourth Amended and Restated Senior Secured Promissory Note of Acqua Liana Capital Partners, LLC, dated December 31, 2020 (the "Fourth A&R Promissory Note"), which currently evidences the obligations of the Original Note owed by Acqua Liana to White Oak. *See* Fourth Amended and Restated Senior Secured Promissory Note of Acqua Liana Capital Partners, LLC, attached to McKee Decl. as Ex. 4; McKee

3

Decl., at ¶ 9; 56.1 Statement, at ¶ 8. The Fourth A&R Promissory Note matured on July 21, 2023, *see* McKee Decl. Ex. 4, at 1; McKee Decl., at ¶ 10; 56.1 Statement, at ¶ 9, and as of October 31, 2023, the outstanding balance of the Fourth A&R Promissory Note is $175,629,710.48. *See* McKee Decl., at ¶ 10; 56.1 Statement, at ¶ 9. As of October 31, 2023, the aggregate outstanding balance under the Navarro Loan Agreements and the Fourth A&R Promissory Note is equal to $239,527,275.60.[2] *See* McKee Decl., at ¶ 11; 56.1 Statement, at ¶ 10.

## II.   Defendants Absolutely and Unconditionally Guaranteed the Navarro Loan Agreements and the Fourth A&R Promissory Note

T. Clarke, A. Clarke, and Wiley each personally guaranteed all the obligations under each of the Navarro Loan Agreements (collectively, the "Loan Guarantees"). *See* T. Clarke and Wiley Second Amended and Restated Personal Guarantee dated July 22, 2019, attached to McKee Decl. as Ex. 5; A. Clarke Amended and Restated Personal Guarantee dated July 22, 2019, attached to McKee Decl. as Ex. 6; *see also* McKee Decl., at ¶ 12; 56.1 Statement, at ¶ 11. Pursuant to the Loan Guarantees, the Defendants "absolutely and unconditionally" guaranteed to pay White Oak, as administrative agent on behalf of the lenders, the amount outstanding under the Navarro Loan Agreements "when due, whether at maturity or earlier by reason of acceleration due to an Event of Default" as defined in each of the Navarro Loan Agreements, as applicable. McKee Decl. Ex. 5, at 1; McKee Decl. Ex. 6, at 1; *see also* McKee Decl., at ¶ 12; 56.1 Statement, at ¶ 11.

Each of T. Clarke, A. Clarke, Wiley, and Thomas M. Clarke and Ana M. Clarke 100% JTWROS also guaranteed all the obligations under the Fourth A&R Promissory Note (the "Note Guarantees" and, together with the Loan Guarantees, each a "Personal Guarantee" and

---

[2] This aggregate outstanding balance includes only those obligations outstanding under the Navarro Loan Agreements and the Fourth A&R Promissory Note and expressly excludes any other obligation Defendants guaranteed pertaining to Epic, Epic's subsidiaries, or White Oak.

collectively, the "Personal Guarantees"). *See* McKee Decl., at ¶¶ 13-17; 56.1 Statement, at ¶ 12. The Note Guarantees are the result of each Defendant's initial guarantee of the obligations owed under the Second A&R Promissory Note. *See* T. Clarke's, and T. Clarke's and A. Clarke's as trustees for 100% JTWROS Second Amended and Restated Personal Guarantee dated June 14, 2019, attached to McKee Decl. as Ex. 7; Wiley's Amended and Restated Personal Guarantee dated April 5, 2019, attached to McKee Decl. as Ex. 8; A. Clarke's Personal Guarantee dated June 14, 2019, attached to McKee Decl. as Ex. 9; McKee Decl., at ¶ 14; 56.1 Statement, at ¶ 13.

On July 22, 2019, when the Third A&R Promissory Note was executed, A. Clarke, T. Clarke, and Wiley in their individual capacities, and T. Clarke and A. Clarke in their capacity as trustees, executed a Reaffirmation and Consent of the Note Guarantees described above ("Reaffirmation and Consent"). *See* Reaffirmation and Consent dated July 22, 2019, attached to McKee Decl. as Ex. 10; McKee Decl., at ¶ 15; 56.1 Statement, at ¶ 14. Pursuant to the Reaffirmation and Consent, Defendants consented to the issuance of the Third A&R Promissory Note and "acknowledge[d] and reaffirm[ed]" their obligations under the guarantees previously given with respect to the Second A&R Promissory Note guarantees and, thus, extended and affirmed those obligations as to the Third A&R Promissory Note. McKee Decl. Ex. 10, at 1; McKee Decl., at ¶ 16; 56.1 Statement, at ¶ 15.

The guarantees of the Second A&R Promissory Note continue to be applicable to the obligations under the Fourth A&R Promissory Note as such obligations are not affected or impaired by any subsequent modifications to the underlying note. Specifically, the Note Guarantees state that each Guarantor's liability under the applicable Note Guarantee "shall not be affected or impaired by . . . any amendment or modification of any of the terms or provisions of any loan agreement, promissory note or other agreement under which the Guaranteed Obligations

or any part thereof arose". McKee Decl. Ex. 7, at 2-3; McKee Decl. Ex. 8, at 2-3; McKee Decl. Ex. 9, at 2-3; McKee Decl., at ¶ 14; 56.1 Statement, at ¶ 13. As a result, any amendment, amendment and restatement, modification, restatement or supplement to the Second A&R Promissory Note does not impair the Note Guarantees. As Defendants agreed (and subsequently acknowledged and reaffirmed) that subsequent modifications to the underlying loans neither affected nor impaired their guarantee obligations, the obligations to guarantee payment extended from the Second A&R Promissory Note to the Third A&R Promissory Note, and extends to the Fourth A&R Promissory Note currently at issue.

Furthermore, the Note Guarantees "absolutely and unconditionally" guaranteed the payment of the obligations under the Fourth A&R Promissory Note "whether at maturity or earlier by reason of acceleration or otherwise." McKee Decl. Exs. 7-9, at 1; *see also* McKee Decl., at ¶¶ 13-17; 56.1 Statement, at ¶ 12. Additionally, under the Note Guarantees, Defendants (i) agreed to "pay or reimburse . . . all reasonable and documented out-of-pocket costs, expenses and attorneys' fees paid or incurred" in the enforcement of the guarantee, (ii) selected New York as the governing law, (iii) consented to New York's personal jurisdiction, (iv) waived any challenge to a New York venue, (v) agreed that any judgment issued could be enforced in any jurisdiction, and (vi) waived any right to a jury trial. *See* McKee Decl. Ex. 7, at §§ 5, 17, 18; McKee Decl. Ex. 8, at §§ 5, 16, 17; McKee Decl. Ex. 9, at §§ 5, 16, 17; 56.1 Statement, at ¶ 13.

Pursuant to each Personal Guarantee, the Defendants "waive[d] presentment, demand for payment, notice of dishonor or nonpayment and protest of any instrument evidencing the Guaranteed Obligations." McKee Decl. Exs. 5-6, at 4; McKee Decl. Exs. 7-9, at 3; McKee Decl., at ¶ 18; 56.1 Statement, at ¶ 17. Furthermore, each Personal Guarantee states that the agent thereunder "shall not be required first to resort for payment of the Guaranteed Obligations to the

6

Payor or other persons, or their properties, or first to enforce, realize upon or exhaust any collateral security for the Guaranteed Obligations, before enforcing the Guaranty." *Id.*

Notwithstanding the foregoing, on August 26, 2019, T. Clarke, A. Clarke, in each case, in their individual capacities, T. Clarke and A. Clarke in their capacity as trustees for Thomas M. Clarke and Ana M. Clarke 100% JTWROS, and Wiley entered into a side letter agreement (the "Side Letter Agreement") with White Oak, as administrative agent under the Navarro Loan Agreements. *See* McKee Decl., at ¶ 19; 56.1 Statement, at ¶ 18. Under the Side Letter Agreement, the parties thereto agreed that to the extent the Defendants cooperated with White Oak in connection with the Section 363 Sale (as defined therein), then the maximum liability of T. Clarke, A. Clarke, and Wiley under their respective Personal Guarantees would be reduced to $20,000,000, in each case. *See* Side Letter Agreement, attached to McKee Decl. as Ex. 11; McKee Decl., at ¶ 19; 56.1 Statement, at ¶ 18.

### III.    Demand for Payment Was Made

All the obligations under the Navarro Loan Agreements and the Fourth A&R Promissory Note matured on July 21, 2023. *See* McKee Decl., at ¶ 21; 56.1 Statement, at ¶ 20. Even though Defendants waived any demand of payment, White Oak has nevertheless made a demand to the Defendants on each of the Personal Guarantees in accordance with the notice provisions set forth in each Personal Guarantee (the "Demands for Payment"). *See* Demands for Payment, attached to McKee Decl. as Ex. 12; *see also* McKee Decl., at ¶ 20; 56.1 Statement, at ¶ 19. The Demands for Payment provided a ten-day payment period. *See* McKee Decl., at ¶ 20; 56.1 Statement, at ¶ 19. Physical copies of the Demands for Payment were successfully delivered to T. Clarke and Wiley. *See id.* Physical delivery of the demand made on A. Clarke was unsuccessful due to the notice address provided being invalid. *See id.* However, courtesy copies of the Demands for Payment

7

were also successfully delivered via email to each Defendant. *See id.* As a result, Plaintiff is entitled to judgment in the amount of (i) $20,000,000 from T. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, (ii) $20,000,000 from A. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, and (iii) $20,000,000 from Wiley, all stemming from the obligations under the Navarro Loan Agreements and the Fourth A&R Promissory Note which the Defendants guaranteed. The aggregate outstanding balance under the Navarro Loan Agreements and the Fourth A&R Promissory Note is not less than $239,527,275.60. *See* McKee Decl., at ¶ 21; 56.1 Statement, at ¶ 20.

## PROCEDURAL HISTORY

On December 22, 2023, White Oak filed a motion for summary judgment in lieu of complaint in the Supreme Court of New York, New York County, pursuant to C.P.L.R. § 3213. *See White Oak Global Advisors, LLC v. Thomas M. Clarke, et al*, Index No. 656462/2023, NYSCEF Doc. No. 2 (the "State Court Action"). On March 22, 2024, Defendants removed the State Court Action to this Court (the United States District Court for the Southern District of New York) pursuant to diversity jurisdiction and White Oak did not seek remand. *See* State Court Action, NYSCEF Doc. No. 25.

## ARGUMENT

Plaintiff is entitled to judgment as a matter of law in the amount of (i) $20,000,000 from T. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, (ii) $20,000,000 from A. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, and (iii) $20,000,000 from Wiley, in each case, with respect to the obligations under the Navarro Loan Agreements and the Fourth A&R Promissory Note, which Defendants guaranteed under the Personal Guarantees. White Oak has demonstrated that it has rights to judgment as a matter of law under one or more

instruments for the payment of money only in the form of guarantees, that the underlying obligations guaranteed remain unpaid, and that the Defendants have failed to make good on their guaranteed obligations to White Oak. For the reasons set forth in detail below, Plaintiff respectfully submits that it is entitled to the relief requested herein.

## I.    The Standard for Summary Judgment Pursuant to FRCP 56 and Applicable Law

When a motion for summary judgment in lieu of complaint is removed from New York State to the Southern District of New York the motion is converted into a Federal Rule 56 motion for summary judgment. *See, e.g.*, *Breco Equities, LLC v. Whitehead*, 2023 WL 5180141, at *2 (S.D.N.Y. Aug. 11, 2023) (citing *UBS AG, London Branch v. Greka Integrated, Inc.*, 2022 WL 2297904, at *2 (2d Cir. June 27, 2022)) ("Upon removal, an action under CPLR 3213 becomes a motion for summary judgment."); *Beaufort Cap. Partners LLC v. Oxysure Sys., Inc.*, 2017 WL 913791, at *2 (S.D.N.Y. Mar. 7, 2017) (citations omitted) ("Upon removal  to federal court, a New York C.P.L.R. section 3213 motion for summary judgment in lieu of complaint is converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure."). According to F.R.C.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citations omitted).

As the Court is sitting in diversity and the parties contractually agreed that the Personal Guarantees shall be governed by and construed in accordance with the substantive laws of the State of New York, New York law governs the interpretation of the Personal Guarantees. *First*

9

*see Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 443 (S.D.N.Y. 2016) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.") (quotations omitted), *then see, e.g.*, McKee Decl. Ex. 7, at 7 ("The guaranty shall be governed by and construed in accordance with the substantive laws… of the State of New York."); 56.1 Statement, at ¶ 13.  Thus, this Court should apply New York substantive law interpreting and enforcing personal guarantees when deciding the Motion.

## II.    Plaintiff Is Entitled to Judgment as a Matter of Law

The Personal Guarantees are contracts, and, as with all claims for breach of written contracts, "[s]ummary judgment is appropriate … 'where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning.'" *TAP Manutencao e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.*, 127 F. Supp. 3d 202, 206 (S.D.N.Y. 2015) (quoting *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996)). With respect to written personal guarantees under New York law, "[t]o meet its prima facie burden on its summary judgment motion, [plaintiff] must prove 'the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty.'" *Cooperatieve Centrale Raiffeisen-Boerenleenbank, BA, "Rabobank Intl.," NY Branch v. Navarro*, 36 N.E.3d 80, 84  (N.Y. 2015) (quoting *Davimos v. Halle*, 826 N.Y.S.2d 61 (N.Y. App. Div. 2006)). This Court should award summary judgment to Plaintiff and against Defendants as Plaintiff has established a *prima facie* case for enforcement of the personal guarantees, and Defendants cannot demonstrate that there are any legitimate disputed issues of material fact relating to their failure to perform. Plaintiff has further demonstrated the exact amount due and owing from the Defendants under the Personal Guarantees and that the guarantors have not performed under the guarantees.

## A.    Plaintiff Proved the Existence of the Guarantees

Plaintiff proved the existence of the Personal Guarantees by establishing that Defendants signed absolute and unconditional personal guarantees and reaffirmed those guarantees on July 22, 2019, *see* McKee Decl., at ¶¶ 12-18; 56.1 Statement, at ¶¶ 11-16, and copies of the Personal Guarantees are attached to the McKee Decl. as Exhibits 5 through 10. Once the existence of guarantees is established, New York law is clear that personal guarantees that are absolute and unconditional guarantees of payment qualify as an "instrument for the payment of money only within the meaning of CPLR 3213." *See Rabobank Intl.,* 36 N.E.3d at 84. Accordingly, courts routinely grant summary judgment with respect to nonpayment of personal guarantees. *See First N.Y. Bank for Bus. v DeMarco*, 130 B.R. 650, 654 (S.D.N.Y. 1991) ("Absolute and unconditional guaranties such as those executed by defendants are consistently upheld by New York courts."); *Rabobank Intl.*, 36 N.E.3d at 85 (citing *Citibank v Plapinger*, 485 N.E.2d 974 (N.Y. 1985)); *see also Chemical Bank v Sepler*, 457 N.E.2d 289 (N.Y. 1983); *Federal Deposit Ins. Corp. v Schwartz*, 432 N.Y.S.2d 899 (N.Y. App. Div. 1980), *aff'd*, 431 N.E.2d 621 (N.Y. 1981).

## B.    Plaintiff Has Provided Proof of Default

As set forth in the accompanying Declaration of Barbara McKee, Defendants defaulted on their obligations to White Oak under the terms of the Personal Guarantees by failing to pay the amounts due under the Navarro Loan Agreements and the Fourth A&R Promissory Note, subject to the dollar limits set forth in the Side Letter Agreement. An Event of Default occurred under the Navarro Loan Agreements and the Fourth A&R Promissory Note as a result of the occurrence of the maturity date under each loan document and note. *See* McKee Decl. Ex. 2, at 63; McKee Decl. Ex. 3, at 62; McKee Decl. Ex. 4, at 4; McKee Decl., at ¶ 21; 56.1 Statement, at ¶ 20. As guarantors, Defendants were responsible for the amount outstanding under the Navarro Loan Agreements and

11

the Fourth A&R Promissory Note. As Defendants have not satisfied the debts owed under the applicable loan documents, a default occurred and remains unremedied under the Personal Guarantees.

As of the date hereof, each of the Defendants is liable to pay up to $20,000,000 with respect to the obligations arising under the Navarro Loan Agreements and the Fourth A&R Promissory Note. White Oak subsequently sent a demand letter to each of the Defendants dated December 8, 2023, noticing the Defendants that the aggregate amount of the obligations arising under the Navarro Loan Agreements and the Fourth A&R Promissory Note have matured and that such amount is currently due and payable. *See* McKee Decl., at ¶ 20; 56.1 Statement, at ¶ 19. Despite such demand, the Defendants have failed to repay the outstanding principal balance and accrued interest due and payable. *See* McKee Decl., at ¶ 21; 56.1 Statement, at ¶ 20.

Having established (i) the Defendants' execution of the Loan Guarantees, (ii) Defendants' execution of the Note Guarantees, (iii) the amount of the obligation guaranteed, and (iv) Defendants' failure to pay the amounts owed thereunder, Plaintiff met its prima facie burden to the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty. Upon the showing of the foregoing, Defendants have the burden of establishing the existence of a legitimate triable issue of fact or a bona fide defense. *See Rabobank Intl.*, 36 N.E.3d at 84. Defendants cannot meet this burden as they indisputably guaranteed, but have not paid, the outstanding principal balance or accrued interest. Plaintiff is, therefore, entitled to entry of judgment as a matter of law upon the Personal Guarantees. Specifically, Plaintiff is entitled to summary judgment in the amount of (i) $20,000,000 from T. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, (ii) $20,000,000 from A. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, and (iii) $20,000,000 from Wiley, in each case, with respect to the

obligations under the Navarro Loan Agreements and the Fourth A&R Promissory Note. *See* McKee Decl., at ¶¶ 20-21; 56.1 Statement, at ¶¶ 19-20.

###### C.      Plaintiff Is Entitled to Pre-Judgment, Post-Judgment Interest, and Cost and Expenses

Plaintiff is entitled to pre-judgment interest at a rate of nine percent (9%) per annum. "In a diversity case, state law governs the award of pre-judgment interest." *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008) (citation omitted). New York statute mandates that pre-judgment interest be applied. Specifically, C.P.L.R. § 5001(a) states that "[i]nterest *shall* be recovered upon a sum awarded because of a breach of performance of a contract." (emphasis added); *see also Spodek v Park Prop. Dev. Assoc.*, 759 N.E.2d 760, 762 (N.Y. 2001) ("CPLR 5001(a) permits a creditor to recover pre-judgment interest on unpaid interest and principal payments awarded from the date each payment became due under the terms of the promissory note to the date liability is established"). New York statute also mandates that the pre-judgment interest rate be nine percent (9%). *See* C.P.L.R. § 5004; *see also Equinox F&B, Inc. v. Roots Pressed Juices LLC*, 2024 WL 2240230, at *14 (S.D.N.Y. May 17, 2024) (ordering pre-judgment interest be applied to a breach of contract claim pursuant to C.P.L.R. § 5004). Thus, Plaintiff is entitled to pre-judgment interest that accrues at nine percent (9%) per annum from the date Defendants breached the Personal Guarantees until a judgment is issued. *See* C.P.L.R. § 5001(b).

Plaintiff is also entitled to post-judgment interest at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System. While state law governs the award of pre-judgment interest in a diversity case, "[i]n contrast, post-judgment interest is governed by federal statute." *Schipani*, 541 F.3d at 165 (citing 28 U.S.C. § 1961(a)). 28 U.S.C. § 1961(a) states that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year

constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The Second Circuit "consistently held that an award of post-judgment interest is mandatory…" *Schipani*, 541 F.3d at 165 (citing *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004)). Therefore, Plaintiff is entitled to post-judgment interest that accrues at rate consistent with 28 U.S.C. § 1961.

Finally, Plaintiff is further entitled to recover all costs and expenses, including attorneys' fees incurred in connection with this action. *See* McKee Decl. Exs. 5-9, at § 5; 56.1 Statement, at ¶ 13.

### **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion for summary judgment in lieu of complaint in its entirety, enter an Order awarding Plaintiff summary judgment, and direct entry of a money judgment in favor of Plaintiff in the principal sum of (i) $20,000,000 from T. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, (ii) $20,000,000 from A. Clarke and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, and (iii) $20,000,000 from Wiley, in each case, with respect to the obligations under the Navarro Loan Agreements and the Fourth A&R Promissory Note. Plaintiff further submits that the Court's Judgment should award Plaintiff pre-judgment interest, post-judgment interest and all costs and expenses, including attorneys' fees incurred in connection with this action.

Dated:  New York, New York
       June 7, 2024

                              Respectfully submitted,


                              By: */s/ Ronald J. Aranoff*

                                 Ronald J. Aranoff
                                 James N. Lawlor
                                 Vincent R. Kappel
                                 T. Wesley Gibbs

                                 WOLLMUTH MAHER & DEUTSCH LLP
                                 500 Fifth Avenue
                                 New York, New York 10110
                                 Phone: (212) 382-3300
                                 Fax: (212) 382-0050
                                 raranoff@wmd-law.com
                                 jlawlor@wmd-law.com
                                 vkappel@wmd-law.com
                                 wgibbs@wmd-law.com

                                 *Attorneys for Plaintiff*

15