UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WHITE OAK GLOBAL ADVISORS, LLC     24-CV-02128 (JSR)

           Plaintiff,

    v.     **DECLARATION OF DAVID WILEY**

THOMAS M. CLARKE, *et al*,

           Defendants.

---

DAVID WILEY, a Defendant in the above-referenced matter, declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Defendant in the above-referenced matter and I submit this Declaration in opposition to Plaintiff's Motion for Summary Judgment.

2. Epic Companies, LLC, together with its subsidiaries (collectively, "Epic"), was a full-service offshore energy service provider to the global decommissioning, installation and maintenance markets headquartered in Houston, Texas.

3. White Oak Global Advisors, LLC and its affiliates ("White Oak" or "Plaintiff") was the principal lender to Epic from in or around July 20, 2018 through 2019.

4. Epic and certain subsidiaries entered into a Loan and Security Agreement, dated July 20, 2018 (the "Prior Senior Loan Agreement"), with White Oak acting as the administrative agent for the loan.

5. The Prior Senior Loan Agreement had several guarantors, all of which eventually became Epic subsidiaries; one such guarantor and eventual Epic subsidiary was Navarro Capital Partners, LLC ("Navarro").

6. In or around 2019, Epic was 50% owned by Orinoco Natural Resources, LLC ("Orinoco") and 50% owned by Oakridge Energy Partners, LLC ("Oakridge").

7. I am the owner of Oakridge. Defendants Ana and Thomas Clarke are the owners of Orinoco.

8. Between July 14, 2019 and July 22, 2019, White Oak foreclosed upon substantially all of Epic's assets.

9. On July 22, 2019, White Oak and other of Epic's lenders re-allocated the debt obligations under the Prior Senior Loan Agreement.

10. The existing loan obligations were divided among three separate entities.

11. Pursuant to that allocation, and as evidenced by an Amended and Restated Loan and Security Agreement, dated July 22, 2019 (the "Navarro Senior LSA"), Navarro Capital, LLC was "liable as a borrower with respect to $15,000,000" of the loan amount.

12. Epic's other lenders similarly re-allocated the existing debt obligations under the Second Amended and Restated Loan and Security Agreement ("Prior Junior Loan Agreement") on July 22, 2019.

13. Pursuant to that re-allocation, and evidenced by a Third Amended and Restated Loan and Security Agreement ("Navarro Junior LSA" together with the Navarro Senior LSA the "Navarro Loans"), dated July 22, 2019, Navarro was "liable as a borrower with respect to $25,000,000" of the loan amount.

14. On July 22, 2019, the parties engaged in a restructuring by which Epic transferred ownership of Navarro and its subsidiaries to Oakridge.

15. At that same time, Epic transferred its equity interest in two other Epic subsidiaries- Epic Alabama Holdings, LLC ("Alabama Holdings") and its subsidiaries and Epic Maritime Asset

Holdings, LLC and its subsidiaries-to Orinoco.

16. On August 26, 2019, Defendants Thomas Clarke and Ana Clarke, as owners of Orinoco, sold Epic Alabama Shipyard, LLC ("Alabama Shipyard"), a subsidiary of Alabama Holdings, to me.

17. On December 31, 2020, the same date as the Fourth Promissory Note, I sold Navarro and its subsidiaries, as well as Alabama Shipyard, to Bruce Taylor, an acquaintance of White Oak's Co-Founder, Andre Hakkak.

18. On January 14, 2020, White Oak Purchaser, a White Oak subsidiary, sold several of Epic's assets back to a Navarro subsidiary.

19. Specifically, the Epic Hedron, a barge, was sold to Navarro Hedron, LLC.

20. Navarro and its subsidiaries remain operative for the sole purpose of winding down, settling claims, and selling assets, the proceeds of which are being used, primarily, to settle outstanding amounts due to White Oak pursuant to the Navarro Loans and the Fourth Amended and Restated Promissory Note, dated December 31, 2020 (the "Fourth Note").

21. I have not had an ownership interest in Navarro or the Alabama Shipyard since December 31, 2020-having sold the entities to Bruce Taylor at White Oak's direction-and therefore, have been uninvolved in efforts to make payments on any underlying debt since that time.

22. In or around April of 2023, Epic Maritime Asset Holdings, the current borrower under the Navarro Senior LSA and Navarro Junior LSA (which evidences a portion of the same debt as the Fourth Note), sold land located at 660 Dunlap Drive, Pinto Island Industrial Park, Mobile, AL to a company known as Austal, USA for $32,500,000.

23. Annexed hereto as Exhibit A is the Land Deed for 660 Dunlap Drive in Mobile

Alabama.

24. A portion of the proceeds from that sale were applied to the outstanding debts under the Navarro Loans and the Fourth Note.

25. In or around August of 2022, Navarro Capital Partners, LLC sold the Global Orion, a dive support vessel and asset ("Vessel") with a fair market charter free value of between $10,000,000 USD and $13,000,000 USD, to a company known as GeoQuip Marine.

26. Annexed hereto as Exhibit B is the Clarksons Valuation of the Vessel.

27. Annexed hereto as Exhibit C is a copy of an article about the sale of the Vessel dated August 4, 2022.

28. A portion of the purchase price was applied to the outstanding debts under the Navarro Loans and the Fourth Note.

29. In or around February of 2022, Navarro Hedron, LLC (a subsidiary of Navarro) sold the DB Tetra Hedron to Triton Offshore/Alliance Offshore-an asset with a fair market charter free value of between $17,000,000 USD and $22,000,000 USD. *See* Exh. C hereto.

30. Annexed hereto as Exhibit D is a copy of an article about the sale of the DB Tetra Hedron, dated February 11, 2022.

31. A portion of the proceeds from the sale were transferred to White Oak, but I do not know how much, and I do not know whether the payments affected of were applied to any of the underlying debt.

32. A subsidiary of Navarro, Navarro Offshore Mexico, S. De Rl De C.V. ("Navarro Mexico") has received at least three arbitration awards, in the amounts of $31,776,000 USD, $22,056,415 USD, and $53,200,000 USD, any payments from which (at the time of my involvement) were to be used to satisfy the underlying debt obligations.

33. Because Navarro's operations are intended solely to wind down and pay off the indebtedness, and because I have been uninvolved in those operations for over three (3) years, I do not know what other payments have been (or may have not been) made to pay off, in part, or in whole, the underlying debt.

34. I never received a payment demand, by mail or personal delivery, from White Oak or any of its agents for any guarantee related to this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in __Toronto, Ontario, Canada__ this 21st day of June, 2024.

_____
David Wiley