UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHITE OAK GLOBAL ADVISORS, LLC<br><br>          Plaintiff,<br><br>- against -<br><br>THOMAS M. CLARKE, *et al*,<br><br>          Defendants. | Case No. 24-CV-02128-JSR |

**DECLARATION OF NYALL ISLAM IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    I, Nyall Islam, pursuant to 28 U.S.C. § 1746 hereby declare and state the following:

    1.  I am the Director of Complex Credit of Plaintiff White Oak Global Advisors, LLC ("Plaintiff" or "White Oak"), a Delaware limited liability company having an address of 3 Embarcadero Center, Suite 550, San Francisco, CA 94111, and am duly authorized to make this declaration on its behalf.

    2.  In my capacity as Director of Complex Credit, I am fully familiar with the facts and circumstances set forth herein, and, except where otherwise indicated, the facts set forth herein are based upon my personal knowledge given my involvement with the matters herein described, my review of Plaintiff's books and records, which are made and reviewed in the ordinary course of business, and publicly available information.

3. I understand that in opposition to Plaintiff's Motion for Summary Judgment, Defendants allege that certain transactions paid down in part the Navarro Senior LSA, Navarro Junior LSA, and the Fourth A&R Promissory Note.[1]

4. Defendants allege incorrectly that the proceeds from sale of the land located at 660 Dunlap Drive, Mobile, AL (the "Land") were applied to the outstanding debts under the Navarro Senior LSA, Navarro Junior LSA, and the Fourth A&R Promissory Note. On March 8, 2023, the Land was sold to a company known as Austal for $32,420,159.66. Attached hereto as **Exhibit 1** is the Consent to Amended and Restated Loan and Security Agreement, dated April 17, 2023, between Epic Alabama Maritime Assets, LLC, Alabama Shipyard Arapaho, LLC, and Alabama Shipyard Wright's Well, LLC, as borrowers and White Oak as administrative agent. Exhibit 1 shows the Land's purchase price of $32,420,159.66 on the first page within the definition of "Designated Transaction".

5. The Land was collateral that secured the Amended and Restated Loan and Security Agreement, dated July 22, 2019, where Epic Alabama Maritime Assets, LLC is the borrower and White Oak is the Administrative Agent (the "Alabama Shipyard LSA"). Attached hereto as **Exhibit 2** is the Alabama Shipyard LSA which, at Schedule 1.01-C, lists the Land as collateral securing the Alabama Shipyard LSA.

6. As the Land secured the Alabama Shipyard LSA, the proceeds from selling the Land were applied to the Alabama Shipyard LSA and not the Navarro Senior LSA, Navarro Junior LSA, or the Fourth A&R Promissory Note. Attached hereto as **Exhibit 3** is the relevant section of

---

[1] Capitalized terms not otherwise defined herein have the same meaning as used in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Plaintiff's Memorandum of Law in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment.

the Austal Real Estate Sale Application of Funds. The first page of Exhibit 3 indicates that, after tax, White Oak received $25,369,693.34, which was to be applied to the outstanding debt of the Alabama Shipyard LSA. White Oak generated Exhibit 3 on April 17, 2023, after White Oak received via wire transaction the proceeds from the sale of the Land. Exhibit 3 is kept in the course of White Oak's regularly conducted business activity, and making Exhibit 3, and similar documents, is a regular practice of White Oak's business activity. Attached hereto as **Exhibit 4** is the Activity Memo Payment Notice, which confirms that the proceeds from the sale of the Land were in fact applied to the debt underlying the Alabama Shipyard LSA. Exhibit 4 was generated on May 23, 2024 by Acquiom Agency Services LLC ("Acquiom") at the direction of White Oak. Acquiom is the servicer White Oak retains to manage various loan transactions, including the Alabama Shipyard LSA and the loan transactions at issue in this action. As servicer, the data contained in Exhibit 4 is kept electronically in the course of Acquiom's regularly conducted business activity, and making Exhibit 4, and similar documents, is a regular practice of Acquiom's business activity. Exhibit 4 was provided to White Oak by Acquiom as White Oak's servicer and agent.

7. Defendants allege incorrectly that proceeds from the sale of the Global Orion support vessel were applied to the outstanding debts under the Navarro Senior LSA, Navarro Junior LSA, and the Fourth A&R Promissory Note. On June 10, 2022, the Global Orion sold for $17,000,000. Attached hereto as **Exhibit 5** is the Global Orion Letter Agreement and Memorandum of Agreement dated June 10, 2022. Exhibit 5 shows the Global Orion's purchase price of $17,000,000 in the twenty-ninth paragraph of the Memorandum of Agreement.

8. After a portion of the proceeds from the Global Orion sale were applied to a short-term loan that Alabama Shipyard, LLC made to Navarro Capital and used to pay legal fees,

3

commission, taxes, and other expenses, a total of $11,783,573 was in fact applied to the Navarro Senior LSA. Attached hereto as **Exhibit 6** is a spreadsheet titled Navarro Orion Repayment. The last page of Exhibit 6 itemizes how much money from the Global Orion sale was applied to which expense and outstanding debt. The last page of Exhibit 6 shows that White Oak received $16,821,926 after the Global Orion was sold despite the Global Orion selling for $17,000,000. The difference between the sale price of the Global Orion and the proceeds that White Oak received – totaling $178,074 – went to Navarro Capital's balance sheet as cash. Exhibit 6 is kept in the course of White Oak's regularly conducted business activity, and making Exhibit 6, and similar documents, is a regular practice of White Oak's business activity.

9.     White Oak applied the $11,783,573 to the Navarro Senior LSA in three installments: (i) $5,474,104.56 on August 3, 2022, (ii) $309,468.57 on August 23, 2022, and (iii) $6,000,000 on August 29, 2022. Attached hereto as **Exhibit 7** is the Activity Memo Payment Notice generated on August 10, 2022, which shows that, effective August 3, 2022, $5,474,104.56 was applied to the Navarro Senior LSA. Exhibit 7 was generated by Acquiom at the direction of White Oak. As servicer of the Navarro Senior LSA, the data contained in Exhibit 7 is kept electronically in the course of Acquiom's regularly conducted business activity, and making Exhibit 7, and similar documents, is a regular practice of Acquiom's business activity. Exhibit 7 was provided to White Oak by Acquiom as White Oak's servicer and agent. Attached hereto as **Exhibit 8** is the Activity Memo Payment Notice generated on May 29, 2024, which shows that, effective August 23, 2022, $309,468.57 was applied to the Navarro Senior LSA. Exhibit 8 was generated by Acquiom at the direction of White Oak. As servicer of the Navarro Senior LSA, the data contained in Exhibit 8 is kept electronically in the course of Acquiom's regularly conducted business activity, and making Exhibit 8, and similar documents, is a regular practice of Acquiom's

business activity. Exhibit 8 was provided to White Oak by Acquiom as White Oak's servicer and agent. Attached hereto as **Exhibit 9** is the Activity Memo Payment Notice generated on May 29, 2024, which shows that, effective August 29, 2022, $6,000,000 was applied to the Navarro Senior LSA. Exhibit 9 was generated by Acquiom at the direction of White Oak. As servicer of the Navarro Senior LSA, the data contained in Exhibit 9 is kept electronically in the course of Acquiom's regularly conducted business activity, and making Exhibit 9, and similar documents, is a regular practice of Acquiom's business activity. Exhibit 9 was provided to White Oak by Acquiom as White Oak's servicer and agent. None of the proceeds from the Global Orion sale were applied to the Navarro Junior LSA or Fourth A&R Promissory Note.

10.     Defendants allege incorrectly that the proceeds from the sale of the DB Hedron vessel were applied to the outstanding debts under the Navarro Senior LSA, Navarro Junior LSA, and the Fourth A&R Promissory Note. On August 17, 2021, for a combined sale price of $22,500,000, the DB Hedron was sold simultaneously with other debt facilities for which White Oak served as administrative agent. Attached hereto as **Exhibit 10** is the Purchase and Sale Agreement dated August 17, 2021, which memorializes the sale of the DB Hedron and certain other debt facilities. Exhibit 10 shows the DB Hedron's and loan facilities' combined purchase price of $22,500,000 in Section 3. Of that $22,500,000, $7,082,224.12 was applied to the Navarro Senior LSA, and the remainder to other obligations not at issue here. Attached hereto as **Exhibit 11** is the Activity Memo Payment Notice that confirms, effective September 1, 2021, the proceeds from the sale of the DB Hedron were in fact applied to the Navarro Senior LSA. Exhibit 11 was generated on September 8, 2021, by Acquiom at the direction of White Oak. As servicer of the Navarro Senior LSA, the data contained in Exhibit 11 is kept electronically in the course of Acquiom's regularly conducted business activity, and making Exhibit 11, and similar documents,

is a regular practice of Acquiom's business activity. Exhibit 11 was provided to White Oak by Acquiom as White Oak's servicer and agent. None of the proceeds from the sale of the DB Hedron were applied to the Navarro Junior LSA or Fourth A&R Promissory Note.

11. Defendants allege incorrectly that the proceeds from three arbitration awards in the amounts of $31,776,000, $22,056,415, and $53,200,000, respectively, (the "Arbitration Awards") were applied to the outstanding debts under the Navarro Senior LSA, Navarro Junior LSA, and the Fourth A&R Promissory Note. Approximately $1,500,000 has been received from the Arbitration Awards related to bond refunds and the majority was used for taxes, legal fees, and working capital for Navarro Capital. White Oak does not expect to collect any significant recovery from the Arbitration Awards that would materially impact the guaranteed obligations because, based on due diligence performed by White Oak, the entities that are responsible for paying the Arbitration Awards lack the financial assets to pay the Arbitration Awards. Regardless, it is not a precondition of the Personal Guarantees for White Oak to recover any amounts under the Arbitration Awards as each of the Personal Guarantees explicitly say that White Oak "shall not be required first to resort for payment of the Guaranteed Obligations to any borrower, or other persons, or their properties, or first to enforce, realize upon or exhaust any collateral security for the Guaranteed Obligations before enforcing this Guaranty." *See* McKee Decl. Ex. 5, at 4; McKee Decl. Ex. 6, at 4; McKee Decl. Ex. 7, at 4; McKee Decl. Ex. 8, at 3-4; McKee Decl. Ex. 9, at 4.

12. The proceeds from the sale of the Global Orion and the DB Hedron were already accounted for by the amount outstanding listed in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment. Attached hereto as **Exhibit 12** is a summary spreadsheet, which reflects, as of October 31, 2023, the amount outstanding under the Navarro Senior LSA, Navarro Junior LSA, and Fourth A&R Promissory Note. The data contained in

6

Exhibit 12 is electronically kept in the course of White Oak's regularly conducted business activity, and making Exhibit 12, and similar documents, is a regular practice of White Oak's business activity.

13. The second page of Exhibit 12 lists, from the month starting August 1, 2019 through the month starting October 1, 2023, interest accruing at 8% on the outstanding balance of the Fourth A&R Promissory Note.

14. The third page of Exhibit 12 lists, from the month starting December 1, 2019 through the month starting October 1, 2023, interest accruing at 8% on the outstanding balance of the Navarro Junior LSA.

15. Because the Navarro Senior LSA was structured into an initial term loan and a fifth amended term loan, the Navarro Senior LSA is tracked on pages four and five of Exhibit 12. The fourth and fifth pages of Exhibit 12 list, from the month starting August 1, 2019 through the month starting October 1, 2023, interest accruing on the outstanding balance of the Navarro Senior LSA. The outstanding balances reflected in Exhibit 12 were all calculated in accordance with the terms of the Navarro Senior LSA, Navarro Junior LSA, and Fourth A&R Promissory Note, as applicable.

16. Regarding the proceeds from the sale of the Global Orion, Exhibit 12 reflects the application of those proceeds to the Navarro Senior LSA's principal balance on page four in rows thirty-nine, forty, and forty-one; $11,068,578.10 was applied to principal and the remainder to interest. Regarding the proceeds from the sale of the DB Hedron, Exhibit 12 reflects the application of those proceeds to the Navarro Senior LSA's principal balance on page four in row twenty-seven, and on page five in row twenty-one; $6,261,408.22 was applied to principal and the remainder to interest. As a result, the amount outstanding provided in Plaintiff's Memorandum of Law in

Support of Plaintiff's Motion for Summary Judgment is accurate as it already incorporated the proceeds from the sale of the Global Orion and the DB Hedron.

17. Attached hereto as **Exhibit 13** is the Second A&R Promissory Note with an original principal amount of $123,803,933.21

18. Attached hereto as **Exhibit 14** is the Third A&R Promissory Note with an original principal amount of $124,827,970.24.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 28, 2024.

DocuSigned by:

*[signature]*
8F5DF9FE249A471...

Nyall Islam