# Islam Declaration

# Exhibit 5

**This Letter Agreement is dated June 10, 2022**

and made between:

(1) NAVARRO HOLDCO, LLC (hereinafter referred to as "Navarro Holdco") and

(2) Geoquip Marine Holding AG or its nominated party (hereinafter referred to as the "Buyers" or "Geoquip")

> (A) Whereas Navarro Capital Partners, LLC (the "Sellers" or "Navarro") and the Buyers, are currently discussing entering into a Memorandum of Agreement (the "MoA") related to the sale by the Sellers and purchase by the Buyers of the vessel Global Orion, with IMO Number 9249439.
>
> (B) In consideration for the Buyers' acceptance of clause 2 (*Deposit*) of the MoA, pursuant to which, as security for the correct fulfilment of the MoA, the Buyers shall remit to the Sellers' account 10% (ten percent) of the purchase price as agreed in the MoA (the "Deposit") in cleared funds by electronic transfer within three (3) banking days from the date that the Sellers and the Buyers sign the MoA, it is hereby agreed as follows: -

1. In the event the Sellers and the Buyers enter into the MoA in substantially the form attached hereto at Appendix 1 and the Buyers, in accordance with the provisions of the MoA have paid the Deposit as per clause 2 (*Deposit*) of the MoA directly to the account of the Sellers (or as otherwise instructed, in writing, by the Sellers), Navarro Holdco hereby irrevocably and unconditionally agrees to cause Navarro to return the Deposit to the Buyers, to the extent such Deposit is required to be returned to the Buyers (Geoquip or its nominated party) pursuant to the MoA. This shall be the Buyers' sole remedy and the maximum aggregate liability of the Sellers to the Buyers under or in connection with the MoA and no other compensation or damages for loss or expense shall be payable by the Sellers.

The amount payable by Navarro Holdco under this agreement will not exceed the amount the Sellers would have had to pay pursuant to the MoA and provided always that Navarro Holdco shall be entitled to the benefit of any and all limitations and/or exclusions of liability which would be available to the Sellers under, pursuant to or arising out of or from the MoA and provided further that the total cumulative liability of Navarro Holdco under this agreement shall not exceed in aggregate an amount equal to the Deposit and interest earned thereon and shall in no circumstances exceed the liability of the Sellers under the MoA.

2. Navarro Holdco shall be entitled to the benefit of any defence, limitation period, set-off, exclusion or limitation of liability that the Sellers would have been entitled to raise against the Buyers.

3. Each party hereto represents and warrants to the other party that the execution and delivery of this Letter Agreement and the performance of its obligations hereunder will not contravene any law applicable to it or conflict with or result in a breach of or default under any agreement or other obligation binding on such party.

4. This Letter Agreement shall continue in full force and effect, and the liability of Navarro Holdco under this Letter Agreement shall not be released or reduced until all of the relevant obligations and liabilities provided in this Letter Agreement have been discharged, after which this Letter Agreement and the liability of Navarro Holdco hereunder shall cease to exist.

5.  A person who is not a party to this agreement has no right under the Contracts (Rights of Third Parties) Act 1999 (as may be amended from time to time) to enforce any provision of this Letter Agreement.

6.  This Letter Agreement may be only amended by an instrument in writing signed by Navarro Holdco and by the Buyers.

7.  This Letter Agreement shall be governed by and construed in accordance with the laws of England and Wales.

8.  Disputes which may arise in connection with or as a result of this Letter Agreement shall be decided by the courts of England and Wales.

NAVARRO HOLDCO, LLC

By: White Oak Global Advisors, LLC, its Manager

By: _____

Name: Barbara McKee

Title: Authorized Signatory


GEOQUIP MARINE HOLDING AG

London                Jun 11, 2022
....................................................... [Place and date]


Stewart Higginson
....................................................... [Name - capital letters]


Director
....................................................... [Position/Title]


....................................................... [Signature]

**MEMORANDUM OF AGREEMENT**

# SALEFORM 2012

Norwegian Shipbrokers' Association's
Memorandum of Agreement for sale and purchase of ships

1    Dated: **10 June 2022**

2    **NAVARRO CAPITAL PARTNERS, LLC with its registered office at 27120 Fulshear Bend Drive, Suite 900-190, Fulshear, TX 77441, USA** (Name of sellers), hereinafter called the "Sellers", have agreed to sell, and

3    **GEOQUIP MARINE HOLDING AG with its registered office at Multergasse 1-3, P.O. Box 743, 9001 St. Gallen, Switzerland** (Name of buyers), hereinafter called the "Buyers", **or its guaranteed nominee** have agreed to buy:

4    Name of vessel: **m/v GLOBAL ORION**

5    IMO Number: **9249439**

6    Classification Society: **American Bureau of Shipping**

7    Class Notation: **A1, AMS, ACCU, DPS-2**

8    Year of Build: **2002** Builder/Yard: **BRATTVAAG SKIPSVERFT AS**

9    Flag: **Mexico (to be changed to Vanuatu)**    Place of Registration: **Dos Bocas**    GT/NT: **4023 / 1311**

10   hereinafter called the "Vessel", on the following terms and conditions:

11   **Definitions**

12   "Banking Days" are days on which banks are open ~~both~~ in the country of the currency stipulated for
13   the Purchase Price in Clause 1 (Purchase Price) ~~and in the place of closing stipulated in Clause 8~~
14   ~~(Documentation)~~ and **Switzerland** ~~(add additional jurisdictions as appropriate)~~.

15   "Buyers' Nominated Flag State" means **the flag state to be confirmed by the Buyers to the Sellers in writing by no later than the Sellers' 10 days' notice**~~(state flag state)~~.

16   "Class" means the class notation referred to above.

17   "Classification Society" means the Society referred to above.

18   "Deposit" shall have the meaning given in Clause 2 (Deposit)

19   ~~"Deposit Holder" means    (state name and location of Deposit Holder) or, if left blank, the~~
20   ~~Sellers' Bank, which shall hold and release the Deposit in accordance with this Agreement.~~

21   "In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa, a
22   registered letter, **or** e-mail ~~or telefax~~.

23   "Parties" means the Sellers and the Buyers.

24   "Purchase Price" means the price for the Vessel as stated in Clause 1 (Purchase Price).

25   "Sellers' Account" means **account number 0122 126 0709 (routing number: 044000024, Swift Code: HUNTUS33) held in the name of Navarro Capital Partners, LLC of 11 Greenway Plaza, Suite 2800 Houston, Texas 77046, USA,** ~~(state details of bank account)~~ at the Sellers' Bank.

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

*SN*    *GW*
         GW

26  "Sellers' Bank" means **The Huntington National Bank of 1 Huntington Square 900 Lee Street WE3007 Charleston, WV 25301, USA** (state name of bank, branch and details) or, if left blank, the bank
27  notified by the Sellers to the Buyers for receipt of the balance of the Purchase Price.

28  **1.  Purchase Price**

29  The Purchase Price is **USD Seventeen Million (US $17,000,000)** (state currency and amount both in words and figures).

30  **2.  Deposit**

31  As security for the correct fulfilment of this Agreement the Buyers shall lodge a deposit of **remit to the Sellers' Account**
32  **10% (ten** per cent) or, if left blank, 10% (ten per cent), of the Purchase Price (the
33  "Deposit") in **cleared funds by electronic transfer** an interest bearing account for the Parties with the Deposit Holder within three (3)
34  Banking Days after **from** the date that:

35  (i) this Agreement has been signed by the Parties and exchanged in original or by
36  e-mail or telefax **(with originals to follow).** ; and

37  (ii) the Deposit Holder has confirmed in writing to the Parties that the account has been
38  opened.

39  The Deposit shall be **not be returned to the Buyers except as per Clauses 5(e) or 14 (Sellers' Default)** released in accordance with joint written instructions of the Parties.
40  Interest, if any, shall be credited to the Buyers. Any fee charged for holding and releasing the
41  Deposit shall be borne equally by the Parties. The Parties shall provide to the Deposit Holder
42  all necessary documentation to open and maintain the account without delay.

43  **3.  Payment**

44  On delivery of the Vessel, but **which shall take place** not later than three (3) Banking Days after the date that Notice of
45  Readiness has been given in accordance with Clause 5 (Time and place of delivery and
46  notices):

47  (i) the Deposit shall be released to the Sellers; and

48  (ii) the **90% (ninety per cent)** balance of the Purchase Price and all other sums payable on delivery by the Buyers
49  to the Sellers under this Agreement shall be paid in full free of bank charges to the
50  Sellers' Account.

51  **4.  Inspection**

52  (a)* The Buyers have inspected and accepted the Vessel's **current** classification records. **The Sellers have confirmed in writing that the special survey including bottom survey has been completed in February 2022 and that the new five year certificates are pending and shall be delivered by the Sellers prior to delivery.** The Buyers
53  have also inspected the Vessel at/**in Offshore Gulf of Mexico, Mexico (at an oil field located in near of position Latitude 18° 18.8' N Longitude 094°15.8' W)** (state place) on **the 21st and the 22nd of May 2022** (state date) and have

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

*GW*
GW

| | |
|---|---|
| 54 | accepted the Vessel following this inspection **(the "Inspection")** and the sale is outright and definite, subject only |
| 55 | to the terms and conditions of this Agreement. **The Buyers unconditionally and irrevocably waive all other rights of inspection and survey whatsoever, apart from the rights of inspection specified in Clause 6 (Divers Inspection / Drydocking).** |
| 56 | ~~(b)* The Buyers shall have the right to inspect the Vessel's classification records and declare~~ |
| 57 | ~~whether same are accepted or not within (state date/period).~~ |
| 58 | ~~The Sellers shall make the Vessel available for inspection at/in (state place/range) within~~ |
| 59 | ~~(state date/period).~~ |
| 60 | ~~The Buyers shall undertake the inspection without undue delay to the Vessel. Should the~~ |
| 61 | ~~Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred.~~ |
| 62 | ~~The Buyers shall inspect the Vessel without opening up and without cost to the Sellers.~~ |
| 63 | ~~During the inspection, the Vessel's deck and engine log books shall be made available for~~ |
| 64 | ~~examination by the Buyers.~~ |
| 65 | ~~The sale shall become outright and definite, subject only to the terms and conditions of this~~ |
| 66 | ~~Agreement, provided that the Sellers receive written notice of acceptance of the Vessel from~~ |
| 67 | ~~the Buyers within seventy-two (72) hours after completion of such inspection or after the~~ |
| 68 | ~~date/last day of the period stated in Line 59, whichever is earlier.~~ |
| 69 | ~~Should the Buyers fail to undertake the inspection as scheduled and/or notice of acceptance of~~ |
| 70 | ~~the Vessel's classification records and/or of the Vessel not be received by the Sellers as~~ |
| 71 | ~~aforesaid, the Deposit together with interest earned, if any, shall be released immediately to the~~ |
| 72 | ~~Buyers, whereafter this Agreement shall be null and void.~~ |
| 73 | ~~*4(a) and 4(b) are alternatives; delete whichever is not applicable. In the absence of deletions,~~ |
| 74 | ~~alternative 4(a) shall apply.~~ |

75  **5.  Time and place of delivery and notices**

76   (a) The Vessel shall be delivered and taken over safely afloat at a safe and accessible berth or
77   anchorage at~~/in~~ **Alabama Shipyard in Mobile, Alabama, USA** ~~(state place/range) in the Sellers' option~~.

78   Notice of Readiness shall not be tendered before: **30 June 2022.**~~(date)~~

79   Cancelling Date (see Clauses 5(c), 6 (a)(i), 6 (a) (iii) and 14): **14 July 2022.**

80   (b) The Sellers shall keep the Buyers well informed of the Vessel's itinerary and shall
81   provide the Buyers with ~~twenty (20),~~ ten (10), five (5) and three (3) **calendar** days' notice of the date the
82   Sellers intend to tender Notice of Readiness and of the intended place of delivery.

83   When the Vessel is at the place of delivery and physically ready for delivery in accordance with
84   this Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.

**In the event that the Buyers are not ready to take delivery of the Vessel within three (3) Banking Days after the date that Notice of Readiness is tendered, the Buyers shall have the right to extend the deadline for the Buyers' taking delivery of the Vessel by up to a maximum of fourteen (14) calendar days (the "Extension"). For each additional day (or part thereof) required, the Buyers shall pay to the Sellers the**

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.    *SN*    *GW*
GW

**sum of USD nine thousand (US$9,000) per day (or part thereof), representing a pre-agreed contribution towards the Sellers' OPEX costs of maintaining the Vessel at the Buyers' disposal for such period. Such sum shall be paid in full in addition to, and together with, the balance of the Purchase Price payable in accordance with Clause 3 (Payment).**

**Notwithstanding the above, the Extension cannot exceed the Cancelling Date, unless the Parties agree otherwise in writing.**

| | |
|---|---|
| 85 | (c) If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the |
| 86 | Vessel will not be ready for delivery by the Cancelling Date they may notify the Buyers in writing |
| 87 | stating the date when they anticipate that the Vessel will be ready for delivery and proposing a |
| 88 | new Cancelling Date. Upon receipt of such notification the Buyers shall have the option of |
| 89 | either cancelling this Agreement in accordance with Clause 14 (Sellers' Default) within three (3) |
| 90 | Banking Days of receipt of the notice or of accepting the new date as the new Cancelling Date. |
| 91 | If the Buyers have not declared their option within three (3) Banking Days of receipt of the |
| 92 | Sellers' notification or if the Buyers accept the new date, the date proposed in the Sellers' |
| 93 | notification shall be deemed to be the new Cancelling Date and shall be substituted for the |
| 94 | Cancelling Date stipulated in line 79. |
| 95 | If this Agreement is maintained with the new Cancelling Date all other terms and conditions |
| 96 | hereof including those contained in Clauses 5(b) and 5(d) shall remain unaltered and in full |
| 97 | force and effect. |
| 98 | (d) Cancellation, failure to cancel or acceptance of the new Cancelling Date shall be entirely |
| 99 | without prejudice to any claim for damages the Buyers may have under Clause 14 (Sellers' |
| 100 | Default) for the Vessel not being ready by the original Cancelling Date. |
| 101 | (e) Should the Vessel become an actual, constructive or compromised total loss before delivery |
| 102 | the Deposit together with interest earned, if any, shall be ~~released~~ **returned** immediately to the Buyers |
| 103 | whereafter this Agreement shall be null and void **and the Buyers or their successors shall have no other or further claims against the Sellers in respect of any losses howsoever caused**. |
| 104 | 6. **Divers Inspection / Drydocking** |
| 105 | (a)* |
| 106 | (i) The **Parties have agreed that the** Buyers shall**,** ~~have the option,~~ at their cost and expense ~~to~~ arrange for an underwater |
| 107 | inspection **on 7 June 2022 in Pascagoula, MS Anchorage. Such underwater inspection shall be carried out** by a diver approved by the Classification Society prior to the delivery of the |
| 108 | Vessel. ~~Such option shall be declared latest nine (9) days prior to the Vessel's intended~~ |
| 109 | ~~date of readiness for delivery as notified by the Sellers pursuant to Clause 5(b) of this~~ |
| 110 | ~~Agreement.~~ The Sellers shall at their cost and expense make the Vessel available for |
| 111 | such inspection **on 7 June 2022**. This inspection shall be carried out **within 7 June 2022** ~~without undue delay~~ and in the |
| 112 | presence of a Classification Society surveyor arranged for by the Sellers and paid for by |
| 113 | the Buyers. The Buyers' representative(s) shall have the right to be present at the diver's |
| 114 | inspection as observer(s) only without interfering with the work or decisions of the |
| 115 | Classification Society surveyor. The extent of the inspection and the conditions under |
| 116 | which it is performed shall be to the satisfaction of the Classification Society. If the |
| 117 | conditions at **Pascagoula, MS Anchorage** ~~the place of delivery~~ are unsuitable for such inspection, the Sellers shall at |
| 118 | their cost and expense make the Vessel available at a suitable alternative place near to |
| 119 | the delivery port, in which event the Cancelling Date shall be extended by the additional |

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

SN    GW
      GW

| | |
|---|---|
| 120 | time required for such positioning and the subsequent re-positioning. The Sellers may |
| 121 | not tender Notice of Readiness prior to completion of the underwater inspection. |
| | |
| 122 | (ii) If the rudder, propeller, bottom or other underwater parts below the deepest load line are |
| 123 | found broken, damaged or defective so as to affect the Vessel's class, then (1) unless |
| 124 | repairs can be carried out afloat to the satisfaction of the Classification Society, the |
| 125 | Sellers shall arrange for the Vessel to be drydocked at their expense for inspection by |
| 126 | the Classification  Society of  the Vessel's underwater parts below the deepest load line, |
| 127 | the extent of the inspection being in accordance with the Classification Society's rules (2) |
| 128 | such defects shall be made good by the Sellers at their cost and expense to the |
| 129 | satisfaction of the Classification Society without condition/recommendation** and (3) the |
| 130 | Sellers shall pay for the underwater inspection and the Classification Society's |
| 131 | attendance. |
| | |
| 132 | Notwithstanding anything to the contrary in this Agreement, if the Classification Society |
| 133 | do not require the aforementioned defects to be rectified before the next class |
| 134 | drydocking survey, the Sellers shall be entitled to deliver the Vessel with these defects |
| 135 | against a deduction from the Purchase Price of the estimated direct cost (of labour and |
| 136 | materials) of carrying out the repairs to the satisfaction of the Classification Society, |
| 137 | whereafter the Buyers shall have no further rights whatsoever in respect of the defects |
| 138 | and/or repairs. The estimated direct cost of the repairs shall be the average of quotes |
| 139 | for the repair work obtained from two reputable independent shipyards at or in the |
| 140 | vicinity of the port of delivery, one to be obtained by each of the Parties within two (2) |
| 141 | Banking Days from the date of the imposition of the condition/recommendation, unless |
| 142 | the Parties agree otherwise. Should either of the Parties fail to obtain such a quote within |
| 143 | the stipulated time then the quote duly obtained by the other Party shall be the sole basis |
| 144 | for the estimate of the direct repair costs. The Sellers may not tender Notice of |
| 145 | Readiness prior to such estimate having been established. |
| | |
| 146 | (iii) If the Vessel is to be drydocked pursuant to Clause 6(a)(ii) and no suitable dry-docking |
| 147 | facilities are available at the port of delivery, the Sellers shall take the Vessel to a port |
| 148 | where suitable drydocking facilities are available, whether within or outside the delivery |
| 149 | range as per Clause 5(a). Once drydocking has taken place the Sellers shall deliver the |
| 150 | Vessel at a port within the delivery range as per Clause 5(a) which shall, for the purpose |
| 151 | of this Clause, become the new port of delivery. In such event the Cancelling Date shall |
| 152 | be extended by the additional time required for the drydocking and extra steaming, but |
| 153 | limited to a maximum of fourteen (14) days. |
| | |
| ~~154~~ | ~~(b)* The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the~~ |
| ~~155~~ | ~~Classification Society of the Vessel's underwater parts below the deepest load line, the extent~~ |
| ~~156~~ | ~~of the inspection being in accordance with the Classification Society's rules. If the rudder,~~ |
| ~~157~~ | ~~propeller, bottom or other underwater parts below the deepest load line are found broken,~~ |
| ~~158~~ | ~~damaged or defective so as to affect the Vessel's class, such defects shall be made good at the~~ |
| ~~159~~ | ~~Sellers' cost and expense to the satisfaction of the Classification Society without~~ |
| ~~160~~ | ~~condition/recommendation**. In such event the Sellers are also to pay for the costs and~~ |
| ~~161~~ | ~~expenses in connection with putting the Vessel in and taking her out of drydock, including the~~ |
| ~~162~~ | ~~drydock dues and the Classification Society's fees. The Sellers shall also pay for these costs~~ |
| ~~163~~ | ~~and expenses if parts of the tailshaft system are condemned or found defective or broken so as~~ |
| ~~164~~ | ~~to affect the Vessel's class. In all other cases, the Buyers shall pay the aforesaid costs and~~ |
| 165 | ~~expenses, dues and fees.~~ |
| | |
| 166 | (c) If the Vessel is drydocked pursuant to Clause 6 (a)(ii) ~~or 6 (b)~~ above: |

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

*SN*   *GW*
        GW

| 167 | (i) The Classification Society may require survey of the tailshaft system, the extent of the |
| --- | --- |
| 168 | survey being to the satisfaction of the Classification surveyor. If such survey is |
| 169 | not required by the Classification Society, the Buyers shall have the option to require the |
| 170 | tailshaft to be drawn and surveyed by the Classification Society, the extent of the survey |
| 171 | being in accordance with the Classification Society's rules for tailshaft survey and |
| 172 | consistent with the current stage of the Vessel's survey cycle. The Buyers shall declare |
| 173 | whether they require the tailshaft to be drawn and surveyed not later than by the |
| 174 | completion of the inspection by the Classification Society. The drawing and refitting of |
| 175 | the tailshaft shall be arranged by the Sellers. Should any parts of the tailshaft system be |
| 176 | condemned or found defective so as to affect the Vessel's class, those parts shall be |
| 177 | renewed or made good at the Sellers' cost and expense to the satisfaction of |
| 178 | Classification Society without condition/recommendation**. |
| 179 | (ii) The costs and expenses relating to the survey of the tailshaft system shall be borne by |
| 180 | the Buyers unless the Classification Society requires such survey to be carried out or if |
| 181 | parts of the system are condemned or found defective or broken so as to affect the |
| 182 | Vessel's class, in which case the Sellers shall pay these costs and expenses. |
| 183 | (iii) The Buyers' representative(s) shall have the right to be present in the drydock, as |
| 184 | observer(s) only without interfering with the work or decisions of the Classification |
| 185 | Society surveyor. |
| 186 | (iv) The Buyers shall have the right to have the underwater parts of the Vessel cleaned |
| 187 | and painted at their risk, cost and expense without interfering with the Sellers' or the |
| 188 | Classification Society surveyor's work, if any, and without affecting the Vessel's timely |
| 189 | delivery. If, however, the Buyers' work in drydock is still in progress when the |
| 190 | Sellers have completed the work which the Sellers are required to do, the additional |
| 191 | docking time needed to complete the Buyers' work shall be for the Buyers' risk, cost and |
| 192 | expense. In the event that the Buyers' work requires such additional time, the Sellers |
| 193 | may upon completion of the Sellers' work tender Notice of Readiness for delivery whilst |
| 194 | the Vessel is still in drydock and, notwithstanding Clause 5(a), the Buyers shall be |
| 195 | obliged to take delivery in accordance with Clause 3 (Payment), whether the Vessel is in |
| 196 | drydock or not. |
| ~~197~~ | ~~*6 (a) and 6 (b) are alternatives; delete whichever is not applicable. In the absence of deletions,~~ |
| 198 | ~~alternative 6 (a) shall apply.~~ |
| 199 | **Notes or memoranda, if any, in the surveyor's report which are accepted by the Classification |
| 200 | Society without condition/recommendation are not to be taken into account. |

201 **7. Spares, bunkers and other items**

| 202 | The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board |
| --- | --- |
| 203 | and on shore**, including all improvements, structures, furniture, fixtures, machinery, tools, supplies, engines, instruments, cranes, rigging, anchors, chains, cables, tackle, apparel, accessories, equipment, radar equipment, cameras, recording equipment, appliances, radio installation and navigational equipment, vessel telephones, inventory, parts, spare parts, marine stores, and appurtenances used in or relating to the Vessel**. All **stores,** spare parts**,** and spare equipment including spare tail-end shaft(s) and/or |
| 204 | spare propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of **I**inspection |
| 205 | used or unused, whether on board or not shall become the Buyers' property, but spares on |
| 206 | order are excluded. Forwarding**, collection, insurance, storage, and other** charges **in relation to items included in the sale and purchase of the Vessel**, if any, shall be for the Buyers' account. The Sellers |
| 207 | are not required to replace spare parts including spare tail-end shaft(s) and spare |

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this BIMCO SmartCon document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.


GW

| | |
|---|---|
| 208 | propeller(s)/propeller blade(s) which are taken out of spare and used as replacement prior to |
| 209 | delivery, but the replaced items shall be the property of the Buyers. Unused stores and |
| 210 | provisions shall be included in the sale and be taken over by the Buyers without extra payment. |

**Sellers shall deliver the Vessel to the Buyers with the STB anchor mooring winch and the STB aft mooring winch repaired to the standard required by Class.**

| | |
|---|---|
| 211 | Library and forms exclusively for use in the Sellers' vessel(s) and captain's, officers' and crew's |
| 212 | personal belongings including the slop chest are excluded from the sale without compensation, |
| 213 | as well as the following additional items: **Additional Marine Sanitation System on deck, three (3) 8-man accommodation containers, air and saturation diving systems and work deck (to be removed by Alabama Shipyard within five (5) days after delivery of the Vessel).**(include list) |

| | |
|---|---|
| 214 | Items on board which are on hire or owned by third parties, listed as follows, are excluded from |
| 215 | the sale without compensation: **(i) Rental satellite system (rental equipment to be removed by supplier); (ii) Viking Life Raft rentals (rental equipment to be removed by Supplier); (iii) MacGregor crane monitoring (remote monitoring); (iv) Fugro satellite correction signal (rental equipment to be removed by Supplier); and such other assets as may be agreed by the Buyers and the Sellers.**(include list) |

| | |
|---|---|
| 216 | Items on board at the time of inspection which are on hire or owned by third parties, not listed |
| 217 | above, shall be replaced or procured by the Sellers prior to delivery at their cost and expense. |
| 218 | The Buyers shall take over remaining bunkers and unused lubricating and hydraulic oils and |
| 219 | greases in storage tanks and unopened drums and pay either: |
| 220 | (a) *the actual net price (excluding barging expenses) as evidenced by invoices or vouchers; or |
| 221 | (b) *the current net market price (excluding barging expenses **and any transportation costs**) at the port and date of delivery |
| 222 | of the Vessel or, if unavailable, at the nearest bunkering port, |
| 223 | for the quantities taken over. |
| 224 | Payment under this Clause shall be made at the same time and place and in the same |
| 225 | currency as the Purchase Price. |
| 226 | "inspection" in this Clause 7, shall mean the Buyers' inspection according to Clause 4(a) or 4(b) |
| 227 | (Inspection), if applicable. If the Vessel is taken over without inspection, the date of this |
| 228 | Agreement shall be the relevant date. |
| 229 | *(a) and (b) are alternatives, delete whichever is not applicable. In the absence of deletions |
| 230 | alternative (a) shall apply. |

| | | |
|---|---|---|
| 231 | 8. | **Documentation** |
| 232 | | The place of closing: **virtual/electronic** |
| 233 | | (a) In exchange for payment of the Purchase Price the Sellers shall provide the Buyers with the |
| 234 | | **original (unless otherwise stated)**following delivery documents **listed in Part A (Sellers' Documentation) of Appendix 1 to this Agreement.**: |
| 235 | | (i) Legal Bill(s) of Sale in a form recordable in the Buyers' Nominated Flag State, |
| 236 | | transferring title of the Vessel and stating that the Vessel is free from all mortgages, |
| 237 | | encumbrances and maritime liens or any other debts whatsoever, duly notarially attested |

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

SN

*GW*
GW

238 ~~and legalised or apostilled, as required by the Buyers' Nominated Flag State;~~

239 ~~(ii) Evidence that all necessary corporate, shareholder and other action has been taken by~~
240 ~~the Sellers to authorise the execution, delivery and performance of this Agreement;~~

241 ~~(iii) Power of Attorney of the Sellers appointing one or more representatives to act on behalf~~
242 ~~of the Sellers in the performance of this Agreement, duly notarially attested and legalised~~
243 ~~or apostilled (as appropriate);~~

244 ~~(iv) Certificate or Transcript of Registry issued by the competent authorities of the flag state~~
245 ~~on the date of delivery evidencing the Sellers' ownership of the Vessel and that the~~
246 ~~Vessel is free from registered encumbrances and mortgages, to be faxed or e-mailed by~~
247 ~~such authority to the closing meeting with the original to be sent to the Buyers as soon as~~
248 ~~possible after delivery of the Vessel;~~

249 ~~(v) Declaration of Class or (depending on the Classification Society) a Class Maintenance~~
250 ~~Certificate issued within three (3) Banking Days prior to delivery confirming that the~~
251 ~~Vessel is in Class free of condition/recommendation;~~

252 ~~(vi) Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of~~
253 ~~deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that~~
254 ~~the registry does not as a matter of practice issue such documentation immediately, a~~
255 ~~written undertaking by the Sellers to effect deletion from the Vessel's registry forthwith~~
256 ~~and provide a certificate or other official evidence of deletion to the Buyers promptly and~~
257 ~~latest within four (4) weeks after the Purchase Price has been paid and the Vessel has~~
258 ~~been delivered;~~

259 ~~(vii) A copy of the Vessel's Continuous Synopsis Record certifying the date on which the~~
260 ~~Vessel ceased to be registered with the Vessel's registry, or, in the event that the registry~~
261 ~~does not as a matter of practice issue such certificate immediately, a written undertaking~~
262 ~~from the Sellers to provide the copy of this certificate promptly upon it being issued~~
263 ~~together with evidence of submission by the Sellers of a duly executed Form 2 stating~~
264 ~~the date on which the Vessel shall cease to be registered with the Vessel's registry;~~

265 ~~(viii) Commercial Invoice for the Vessel;~~

266 ~~(ix) Commercial Invoice(s) for bunkers, lubricating and hydraulic oils and greases;~~

267 ~~(x) A copy of the Sellers' letter to their satellite communication provider cancelling the~~
268 ~~Vessel's communications contract which is to be sent immediately after delivery of the~~
269 ~~Vessel;~~

270 ~~(xi) Any additional documents as may reasonably be required by the competent authorities of~~
271 ~~the Buyers' Nominated Flag State for the purpose of registering the Vessel, provided the~~
272 ~~Buyers notify the Sellers of any such documents as soon as possible after the date of~~
273 ~~this Agreement; and~~

274 ~~(xii) The Sellers' letter of confirmation that to the best of their knowledge, the Vessel is not~~
275 ~~black listed by any nation or international organisation.~~

276 (b) At the time of delivery the Buyers shall provide the Sellers with **the original (unless otherwise stated) delivery documents listed in Part B (Buyers' Documentation) of Appendix 1 to this Agreement.**

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.    SN    *GW*
GW

| | |
|---|---|
| 277 | ~~(i) Evidence that all necessary corporate, shareholder and other action has been taken by~~ |
| 278 | ~~the Buyers to authorise the execution, delivery and performance of this Agreement; and~~ |
| | |
| 279 | ~~(ii) Power of Attorney of the Buyers appointing one or more representatives to act on behalf~~ |
| 280 | ~~of the Buyers in the performance of this Agreement, duly notarially attested and legalised~~ |
| 281 | ~~or apostilled (as appropriate).~~ |
| | |
| 282 | (c) If any of the documents listed in Sub-clauses (a) and (b) above are not in the English |
| 283 | language they shall be accompanied by an English translation by an authorised translator or |
| 284 | certified by a lawyer qualified to practice in the country of the translated language. |
| | |
| 285 | (d) The Parties shall to the extent possible exchange copies, drafts or samples of the |
| 286 | documents listed in Sub-clause (a) and Sub-clause (b) above for review and comment by the |
| 287 | other ~~p~~**P**arty not later than **nine (9)** ~~(state number of days), or if left blank, nine (9)~~ **Banking** ~~d~~**D**ays prior to the |
| 288 | Vessel's intended date of readiness for delivery as notified by the Sellers pursuant to |
| 289 | Clause 5(b) of this Agreement. |
| | |
| 290 | (e) Concurrent with the exchange of documents in Sub-clause (a) and Sub-clause (b) above, |
| 291 | the Sellers shall also hand to the Buyers the classification certificate(s) as well as all plans, |
| 292 | drawings and manuals, (excluding ISM/ISPS manuals), which are on board the Vessel. Other |
| 293 | certificates which are on board the Vessel shall also be handed over to the Buyers unless |
| 294 | the Sellers are required to retain same, in which case the Buyers have the right to take copies. |
| | |
| 295 | (f) Other technical documentation which may be in the Sellers' possession shall promptly after |
| 296 | delivery be forwarded to the Buyers at the~~ir~~ **Buyers'** expense, if the~~y~~ **Buyers** so request. The Sellers may keep |
| 297 | the Vessel's log books but the Buyers have the right to take copies of same. |
| | |
| 298 | (g) The Parties shall sign and deliver to each other a Protocol of Delivery and Acceptance |
| 299 | confirming the date and time of delivery of the Vessel from the Sellers to the Buyers. |
| | |
| 300 | **9. Encumbrances** |
| | |
| 301 | The Sellers warrant that the Vessel, at the time of delivery, is free from all charters, |
| 302 | encumbrances, mortgages and maritime liens or any other debts whatsoever, and is not subject |
| 303 | to Port State or other administrative detentions. The Sellers hereby undertake to indemnify the |
| 304 | Buyers against all consequences of claims made against the Vessel which have been incurred |
| 305 | prior to the time of delivery. |
| | |
| 306 | **10. Taxes, fees and expenses** |
| | |
| 307 | Any taxes, fees and expenses in connection with the purchase and registration in the Buyers' |
| 308 | Nominated Flag State shall be for the Buyers' account, whereas similar charges in connection |
| 309 | with the closing of the Sellers' register shall be for the Sellers' account. |

**The Sellers undertake to reflag the Vessel to the Republic of Vanuatu prior to delivery. Any documented costs or expenses arising out of the deletion of the Vessel with, and closure of the Vessel's registry from, the Mexican registry or the registration of the Vessel with the registry of Vanuatu shall be borne by the Sellers.**

| | |
|---|---|
| 310 | **11. Condition on delivery** |

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

*SH*   *GW*
       GW

311　　The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is
312　　delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be
313　　delivered and taken over as she was at the time of ~~i~~**I**nspection, fair wear and tear excepted.

314　　However, the Vessel shall be delivered free of cargo and free of stowaways with her Class
315　　maintained without condition/recommendation*, free of average damage affecting the Vessel's
316　　class, and with her classification certificates and **Vanuatu** national certificates, as well as all other
317　　certificates the Vessel had at the time of ~~i~~**I**nspection, valid and unextended without
318　　condition/recommendation* by the Classification Society or the relevant authorities at the time
319　　of delivery.

320　　~~"inspection" in this Clause 11, shall mean the Buyers' inspection according to Clause 4(a) or~~
321　　~~4(b) (Inspections), if applicable. If the Vessel is taken over without inspection, the date of this~~
322　　~~Agreement shall be the relevant date.~~

323　　*Notes and memoranda, if any, in the surveyor's report which are accepted by the Classification
324　　Society without condition/recommendation are not to be taken into account.

325　**12. Name/markings**

326　　Upon delivery the Buyers undertake to change the name of the Vessel and alter funnel
327　　markings.

328　**13. Buyers' default**

329　　Should the Deposit not be lodged in accordance with Clause 2 (Deposit), the Sellers have the
330　　right to cancel this Agreement, and they shall be entitled to claim compensation for their losses
331　　and for all expenses incurred together with interest.
332　　Should the Purchase Price not be paid in accordance with Clause 3 (Payment) **or should the Buyers otherwise refuse to either execute and provide the documents set out in Part B (Buyers' Documentation) of Appendix 1 or take delivery of the Vessel pursuant to this Agreement**, the Sellers
333　　have the right to cancel this Agreement, in which case the Deposit together with interest
334　　earned, if any, shall be ~~released to~~**retained by** the Sellers. If the Deposit does not cover the~~ir~~ **Sellers'** loss, the
335　　Sellers shall be entitled to claim further compensation for their losses and for all expenses
336　　incurred together with interest.

337　**14. Sellers' default**

338　　Should the Sellers fail to give Notice of Readiness in accordance with Clause 5(b) or fail to be
339　　ready to validly complete a legal transfer by the Cancelling Date the Buyers shall have the
340　　option of cancelling this Agreement. If after Notice of Readiness has been given but before
341　　the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not
342　　made physically ready again by the Cancelling Date and new Notice of Readiness given, the
343　　Buyers shall retain their option to cancel. In the event that the Buyers elect to cancel this
344　　Agreement **pursuant to this Clause 14**, the Deposit together with interest earned **thereon**, if any, shall be released to them
345　　~~immediately~~**promptly**. **This shall be the Buyers' sole remedy and the maximum aggregate liability of the Sellers to the Buyers under or in connection with this Agreement and no other compensation or damages for loss or expense shall be payable by the Sellers.**

346　　~~Should the Sellers fail to give Notice of Readiness by the Cancelling Date or fail to be ready to~~
347　　~~validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers~~

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.   *SH*   *GW*
GW

348 ~~for their loss and for all expenses together with interest if their failure is due to proven~~
349 ~~negligence and whether or not the Buyers cancel this Agreement.~~

350 **15. Buyers' representatives**

351 After this Agreement has been signed by the Parties and the Deposit has been ~~lodged~~**paid**, the
352 Buyers have the right to place two (2) representatives on board the Vessel at their sole risk and
353 expense.

354 These representatives are on board for the purpose of familiarisation and in the capacity of
355 observers only, and they shall not interfere in any respect with the operation of the Vessel. The
356 Buyers and the Buyers' representatives shall sign the Sellers' P&I Club's standard letter of
357 indemnity **as well as the Sellers' usual indemnification agreement** prior to their embarkation **and provide evidence of supporting insurances. These representatives shall adhere to the Sellers' requirements in relation to COVID-19 compliance and procedures.**

358 **16. Law and Arbitration**

359 ~~(a)~~ *This Agreement shall be governed by and construed in accordance with ~~English~~ **the** law**s of England and Wales** and
360 any dispute arising out of or in connection with this Agreement shall be referred to arbitration in
361 London in accordance with the Arbitration Act 1996 or any statutory modification or re-
362 enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

363 The arbitration shall be conducted in accordance with the London Maritime Arbitrators
364 Association (LMAA) Terms current at the time when the arbitration proceedings are
365 commenced. **The arbitrators shall be members of the London Maritime Arbitrators Association.**

366 The reference shall be to three **(3)** arbitrators. A ~~p~~**P**arty wishing to refer a dispute to arbitration shall
367 appoint its arbitrator and send notice of such appointment in writing to the other ~~p~~**P**arty requiring
368 the other ~~p~~**P**arty to appoint its own arbitrator within fourteen (14) calendar days of that notice and
369 stating that it will appoint its arbitrator as sole arbitrator unless the other ~~p~~**P**arty appoints its own
370 arbitrator and gives notice that it has done so within the fourteen (14) days specified. If the
371 other ~~p~~**P**arty does not appoint its own arbitrator and give notice that it has done so within the
372 fourteen (14) days specified, the ~~p~~**P**arty referring a dispute to arbitration may, without the
373 requirement of any further prior notice to the other ~~p~~**P**arty, appoint its arbitrator as sole arbitrator
374 and shall advise the other ~~p~~**P**arty accordingly. The award of a sole arbitrator shall be binding on
375 both Parties as if the sole arbitrator had been appointed by agreement.

376 In cases where neither the claim nor any counterclaim exceeds the sum of US$100,000 the
377 arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at
378 the time when the arbitration proceedings are commenced.

379 ~~(b) *This Agreement shall be governed by and construed in accordance with Title 9 of the~~
380 ~~United States Code and the substantive law (not including the choice of law rules) of the State~~
381 ~~of New York and any dispute arising out of or in connection with this Agreement shall be~~
382 ~~referred to three (3) persons at New York, one to be appointed by each of the parties hereto,~~
383 ~~and the third by the two so chosen; their decision or that of any two of them shall be final, and~~
384 ~~for the purposes of enforcing any award, judgment may be entered on an award by any court of~~
385 ~~competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the~~
386 ~~Society of Maritime Arbitrators, Inc.~~

387 ~~In cases where neither the claim nor any counterclaim exceeds the sum of US$ 100,000 the~~

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.                    SN    GW
                                                                                                                                                            GW

| | |
|---|---|
| 388 | ~~arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the~~ |
| 389 | ~~Society of Maritime Arbitrators, Inc.~~ |
| 390 | ~~(c) This Agreement shall be governed by and construed in accordance with the laws of~~ |
| 391 | ~~(state place) and any dispute arising out of or in connection with this Agreement shall be~~ |
| 392 | ~~referred to arbitration at    (state place), subject to the procedures applicable there.~~ |
| 393 | ~~*16(a), 16(b) and 16(c) are alternatives; delete whichever is not applicable. In the absence of~~ |
| 394 | ~~deletions, alternative 16(a) shall apply.~~ |

395  17.  **Notices**

396  All notices to be provided under this Agreement shall be in writing.

397  Contact details for recipients of notices are as follows:

398  For the Buyers: **the e-mail address to be confirmed by the Buyers to the Sellers in writing**

399  For the Sellers: **gw@navarrocapitalpartners.com**

400  18.  **Entire Agreement**

401  The written terms of this Agreement comprise the entire agreement between the Buyers and
402  the Sellers in relation to the sale and purchase of the Vessel and supersede all previous
403  agreements whether oral or written between the Parties in relation thereto.

404  Each of the Parties acknowledges that in entering into this Agreement it has not relied on and
405  shall have no right or remedy in respect of any statement, representation, assurance or
406  warranty (whether or not made negligently) other than as is expressly set out in this Agreement.

407  Any terms **and conditions** implied into this Agreement by any applicable statute or law are hereby excluded **including but not limited to the Sale of Goods Act 1979** to
408  the extent that such exclusion can legally be made. Nothing in this Clause shall limit or exclude
409  any liability for fraud.

**19.    Private and Confidential**

**(a)    Subject to Sub-clauses (b) and (c) of this Clause 19 (Private and Confidential), the Sellers and the Buyers shall treat as confidential, and shall use all efforts to ensure that their successors and assigns shall do so, the existence and provisions of this Agreement and the transactions and business activities contemplated by this Agreement.**

**(b)    Each Party may with the prior written consent of the other Party disclose to any third party information relating to the matters referred to under Sub-clause (a) above.**

**(c)    Each Party shall be entitled to disclose any information to their (i) respective attorneys, legal advisers, or other advisers, affiliates, shareholders, financiers, or auditors, (ii) on a need to know basis or to such extent as may from time to time be required by applicable law or the rules or regulations of any applicable stock exchange or similar body on which equity of a Party is traded, or (iii) to any affiliates and partners of either Party's controlling parties, provided that any such third parties are advised of the confidentiality restrictions contained herein.**

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

SH      GW
         GW

(d) If any Party determines that it is required by law to disclose information, it will, to the extent reasonably practicable, consult with the other Party regarding such disclosure or filing and seek confidential treatment for such portions of the disclosure or filing as may be reasonably requested by the other Party.

(e) A breach of the confidentiality provisions shall not give either Party the right to terminate this Agreement.

20. **Miscellaneous**

(a) (Counterparts) This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all counterparts shall together constitute one agreement. Transmissions of an executed counterpart of this Agreement by e-mail in accordance with Clause 17 (Notices) shall take effect as delivery of an executed counterpart of this Agreement. If the e-mail method of delivery is adopted, without prejudice to the validity of the Agreement thus made, each Party, shall provide the others with the original of such counterpart as soon as reasonably possible thereafter.

(b) (Amendments) No amendment, modification, supplement, or variation of or to this Agreement shall be valid, unless it is made in writing and signed by a duly authorised representative of each Party.

(c) (Illegality and Invalidity) If any provision of this Agreement is held to be illegal or invalid, such illegality or invalidity shall not affect the other provisions of this Agreement, which shall remain in full force and effect.

21. **COVID Clause**

(a) If on or prior to the arrival of the Vessel at the intended place of delivery (the "Original Delivery Place"), the Sellers or the Buyers reasonably believe that they will be unable to deliver or take physical delivery of the Vessel due to, or as a result of, any of the Restrictions for more than seven (7) consecutive days, then either Party shall notify the other without delay and both Parties shall use reasonable endeavours to agree on a mutually suitable alternative place of delivery unaffected by such Restrictions for the purposes of delivery (the "Alternative Delivery Place") as close as possible to the original delivery place and where Sellers' crew disembarkation is also possible.

(b) If (in the Parties' reasonable view) Sellers' crew cannot disembark or the Buyers' crew cannot embark the Vessel at the Alternative Delivery Place (or, in the event that no Alternative Delivery Place is available as per Sub-clause 21(a) above, the Original Delivery Place) due to the Restrictions, Buyers shall engage with Vessel's third party technical managers to discuss the option to take delivery of the Vessel with the existing crew on board, if the crew so agree, under terms and conditions to be agreed at that time.

(c) The actual bunkering costs plus the Vessel's OPEX costs (including but not limited to any port charges) for the time required to reposition the Vessel from the Original Delivery Place to the Alternative Delivery place for delivery shall be equally shared by the Sellers and the Buyers on an at cost basis and Sellers shall provide documentation to support such costs.

(d) The Cancelling Date shall be extended: (i) in the event competent authorities at the Original Delivery Place require the Vessel and/or the Sellers' crew to be placed, prior to delivery, in quarantine (whether onboard or ashore), by the exact number of days the Vessel and/or Sellers' crew have been in quarantine; and (ii) in the event of the Vessel being repositioned pursuant to Sub-clause 21(a) above, by the additional time necessary (as mutually agreed between the Buyers and the Sellers).

(e) The Parties shall have seven (7) days to agree the Alternative Delivery Place under Sub-clause 21(a) above. If the Parties agree on the Alternative Delivery Place, including any amendments to this

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

Agreement, then this Agreement shall be maintained with the Alternative Delivery Place as the new place of delivery and the new Cancelling Date as per Sub-clause 21(d) above and other agreed amendments, if any, and all other terms and conditions hereof shall remain unaltered and in full force and effect. If the Parties cannot reach an agreement as to the Alternative Delivery Place or if the Cancelling Date is extended for more than sixty (60) days under Sub-clause 21(d) above, either Party may cancel this Agreement, in which case: (i) the Deposit together with any interest earned, shall be returned to the Buyers; and (ii) the Parties shall have no further claims or liablities against each other and in connection with this Agreement.

(f) Except as provided for under Sub-clause 21(c) above, the Sellers shall not be liable for any additional costs incurred by Buyers as a result of matters contemplated in this Clause 21.

(g) For the purposes of this Clause 21, "Restrictions" means any mandatory orders given by any competent authority in any jurisdiction or other circumstances relating to the COVID-19/coronavirus outbreak preventing the disembarkation and/or repatriation of the Sellers' crew and for the embarkation of the Buyers' crew or, in the case of a Alternative Delivery Place only, the transit of the Buyers' crew from their country of residence to such Alternative Delivery Place for the purposes of embarkation onto the Vessel.

For and on behalf of the Sellers  
*Gregory Wagner*  
Gregory Wagner (Jun 11, 2022 08:12 EDT)  
Name: Gregory Wagner  
Title: CEO

For and on behalf of the Buyers  
*Sh Higgin*  
Name: Stewart Higginson  
Title: Director

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

## APPENDIX 1

### PART A: SELLERS' DOCUMENTATION

1.  Legal Bill of Sale (in triplicate) in a form required by Buyers' Nominated Flag State, transferring right, title, and interest in the Vessel and stating that the Vessel is free from all mortgages, encumbrances, and maritime liens or any other debts whatsoever, duly notarially attested;

2.  Copy resolutions of the shareholder(s) and board of directors of the Sellers confirming ownership of the Vessel, authorising or ratifying the sale of the Vessel to the Buyers on terms set out in this Agreement, and granting Powers of Attorney to execute on behalf of Sellers, inter alia, the Bill of Sale, the Protocol of Delivery and Acceptance, invoices, and all other documents whatsoever required in order to effect physical and legal delivery of the Vessel to the Buyers;

3.  Copies of the Sellers' certificate of incorporation, by-laws and memorandum and articles of association or equivalent constitutional document(s);

4.  Power of Attorney of the Sellers appointing one or more representatives to act on behalf of the Sellers in the performance of this Agreement and authorising them to effect the sale and transfer of the Vessel to the Buyers pursuant to this Agreement and to execute on behalf of the Sellers, inter alia, the Bill of Sale, the Protocol of Delivery and Acceptance, invoices, and any other documents whatsoever required in order to effect physical and legal delivery of the Vessel to the Buyers, duly notarised by a Notary Public;

5.  Copy Certificate of Ownership and Non Encumbrance issued by the competent authorities of the Flag State on the date of delivery evidencing the Sellers' ownership of the Vessel and that the Vessel is free from registered encumbrances and mortgages, to be e-mailed by such authority to the closing meeting with the original to be sent to the Buyers as soon as practicable after delivery of the Vessel (as required); the Buyers acknowledge and agree that the Sellers' receipt of the Purchase Price and the other sums payable to the Sellers under this Agreement shall be a condition precedent to the Sellers' obligation to procure the discharge and deletion of any mortgage over the Vessel and to the issuance of the Certificate of Ownership and Non Encumbrance referred to in the preceding sentence;

6.  Declaration of Class or (depending an the Classification Society) a Class Maintenance Certificate issued within five (5) Banking Days prior to delivery confirming that the Vessel is in Class;

7.  Copy of the Certificate of Deletion of the Vessel from the Vanuatu registry at the time of delivery, or, in the event that the registry does not as a matter of practice issue such documentation immediately, a written undertaking by the Sellers to effect deletion from the Vanuatu registry forthwith and provide a certificate or other official evidence of deletion to the Buyers promptly and latest within four (4) weeks after the Purchase Price has been paid and the Vessel has been delivered;

8.  The Vessel's Continuous Synopsis Record certifying the date on which the Vessel ceased to be registered with the Vessel's registry, or in the event that the registry does not as a matter of practice issue such certificate immediately, a written undertaking from the Sellers to provide the copy of this certificate promptly upon it being issued (but in any event no later than twenty (20) days following delivery);

9.  Commercial invoice for the Vessel; and

10. Copy of the Sellers' letter(s) to their satellite communication providers, cancelling the Vessel's communications contract which is to be sent immediately after delivery of the Vessel.

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

*SN*     *GW*
         GW

**Original documents to be retained by the Sellers**

The Sellers shall retain the following original documentation at delivery (in addition to taking copies of such other documents as Sellers may require): -
- Certificate of Registry;
- Ship Radio Station License; and
- Minimum Safe Manning Certificate.

**PART B: BUYERS' DOCUMENTATION**

1.      Copy resolutions of the shareholder(s) and board of directors of the Buyers, certified by the Buyers as being correct, complete, and in effect, authorising the purchase of the Vessel from the Sellers on the terms set out in this Agreement, authorising the execution and delivery of this Agreement and granting Powers of Attorney to execute on behalf of Buyers, inter alia, the Protocol of Delivery and Acceptance and any other documents whatsoever required in order to accept physical and legal delivery of the Vessel from the Sellers;

2.      Power of Attorney of the Buyers appointing one or more representatives to act on behalf of the Buyers in the performance of this Agreement and authorising them to accept delivery of the Vessel from the Sellers pursuant to this Agreement and to execute on behalf of Buyers, inter alia, the Protocol of Delivery and Acceptance and any other documents whatsoever required in order to accept physical and legal delivery of the Vessel from the Sellers, duly notarially attested and legalised by apostille (as appropriate);

3.      Certificate of good standing of the Buyers dated not earlier than seven (7) Banking Days prior to the date of the Vessel's delivery; and

4.      Copies of the Buyers' certificate of incorporation, by-laws and memorandum and articles of association or equivalent constitutional document(s).

**PART C: PROVISIONS APPLICABLE TO BUYERS' AND SELLERS' DOCUMENTATION**

1.      Each Party shall issue an undertaking to the other Party to promptly deliver its original documents to the other Party following delivery of the Vessel and if required by the Buyers' Nominated Flag State in order to register the Vessel in the name of the Buyers immediately upon delivery. If required to do so, the Sellers shall pre-position the Bill of Sale and any other relevant delivery documents listed in Part A (Sellers' Documentation) above with such registry.

Copyright © 2012 Norwegian Shipbrokers' Association. All rights reserved. Published by BIMCO. No part of this **BIMCO SmartCon** document may be copied, reproduced or distributed in any form without the prior written permission of the Norwegian Shipbrokers' Association. Explanatory notes are available from BIMCO at www.bimco.org. Adopted by BIMCO in 1956, revised 1966, 1983, 1986/87, 1993 and 2012.

*SU*    *GW*
         GW

# Global Orion - Letter Agreement and MOA

Final Audit Report 2022-06-11

| | |
|---|---|
| Created: | 2022-06-10 |
| By: | Kelton Tonn (kt@navarrocapitalpartners.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAxTOrtCAbKSiCMRMLZH6VrtpTFmQJEHI8 |

## "Global Orion - Letter Agreement and MOA" History

- **Document digitally presigned by**
  2022-06-10 - 3:22:03 PM GMT- IP address: 174.203.73.90

- **Document digitally presigned by DocuSign\, Inc. (enterprisesupport@docusign.com)**
  2022-06-10 - 7:43:22 PM GMT- IP address: 174.203.73.90

- **Document created by Kelton Tonn (kt@navarrocapitalpartners.com)**
  2022-06-10 - 8:59:13 PM GMT- IP address: 174.203.73.90

- **Document emailed to Stewart Higginson (stewart.higginson@geoquip-marine.com) for signature**
  2022-06-10 - 9:04:51 PM GMT

- **Email viewed by Stewart Higginson (stewart.higginson@geoquip-marine.com)**
  2022-06-10 - 9:09:38 PM GMT- IP address: 172.225.176.242

- **Document e-signed by Stewart Higginson (stewart.higginson@geoquip-marine.com)**
  Signature Date: 2022-06-11 - 5:44:06 AM GMT - Time Source: server- IP address: 90.218.44.72

- **Document emailed to Gregory Wagner (gw@navarrocapitalpartners.com) for signature**
  2022-06-11 - 5:44:09 AM GMT

- **Email viewed by Gregory Wagner (gw@navarrocapitalpartners.com)**
  2022-06-11 - 5:44:34 AM GMT- IP address: 104.28.32.94

- **Document e-signed by Gregory Wagner (gw@navarrocapitalpartners.com)**
  Signature Date: 2022-06-11 - 12:12:56 PM GMT - Time Source: server- IP address: 173.199.195.38

- **Agreement completed.**
  2022-06-11 - 12:12:56 PM GMT

Adobe Acrobat Sign