# Islam Declaration

# Exhibit 14

# THIRD AMENDED AND RESTATED SENIOR SECURED PROMISSORY NOTE
## OF
## ACQUA LIANA CAPITAL PARTNERS, LLC

Original Principal Amount:                                                  July 22, 2019
**$124,827,970.24**

       1.       Acqua Liana Capital Partners, LLC, a Texas limited liability company (the "Payor"), for value received, pursuant to (i) that certain Resignation, Loan Purchase and Sale Agreement, dated as of October 12, 2018 (as amended, restated, modified or supplemented from time to time, the "Loan Purchase and Sale Agreement"), among the Payor, the selling lenders party thereto (collectively, the "White Oak Lenders", "Noteholders", or "Holders"), White Oak Global Advisors, LLC, a Delaware limited liability company ("WOGA"), in its capacity as administrative agent for the White Oak Lenders (in such capacity, "Agent") under that certain Collateral Agency Agreement, dated as of October 12, 2018 (the "Collateral Agency Agreement"), among each White Oak Lender and Agent, with its principal office at 3 Embarcadero Center #550, San Francisco, CA 94111, and (ii) the Junior Loans (as defined below), hereby promises to pay to Agent for the benefit of the Holders, to be applied in accordance with the terms of the Collateral Agency Agreement, the sum of (a) the original principal amount of $124,827,970.24 plus (b) interest accrued thereon, as set forth in Section 2 of this Third Amended and Restated Senior Secured Promissory Note of Acqua Liana Capital Partners, LLC (this "Note"). The ratable share of each Holder in respect of the principal balance of this Note is as set forth on Exhibit A hereto (as to each Holder, the ratable share of such Holder in the outstanding principal balance of this Note as set forth on Exhibit A being referred to as such Holder's "Ratable Share"). As used herein, "Junior Loans" shall mean those certain loans in the aggregate principal amount of $124,827,970.24 made by Holders to Payor on the Effective Date (as defined below), the proceeds of which were used by Payor to make one or more term loans to Epic Companies, LLC, a Delaware limited liability company ("Epic") and its Subsidiaries prior to the date hereof, of which (i) $64,827,970.24 has been allocated to Epic pursuant to the terms of that certain Third Amended and Restated Loan and Security Agreement dated as of the date hereof by and among Payor (as Administrative Agent (as defined therein) and as a lender thereunder), Epic ("Epic Borrower"), certain subsidiaries and affiliates of Epic party thereto as guarantors, the several entities from time to time party thereto as lenders (the "Epic Lenders") (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Epic Loan Agreement"), (ii) $35,000,000 has been allocated to Epic Alabama Maritime Assets, LLC, a Delaware limited liability company ("Shipyard Borrower") pursuant to the terms of that certain Third Amended and Restated Loan and Security Agreement dated as of the date hereof by and among Payor (as Administrative Agent (as defined therein) and as a lender thereunder), Shipyard Borrower, certain subsidiaries and affiliates of Epic party thereto as guarantors, the several entities from time to time party thereto as lenders (the "Shipyard Lenders") (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Shipyard Loan Agreement"), and (iii) $25,000,000 has been allocated to Navarro Capital Partners, LLC, a Texas limited liability company ("Navarro Borrower") pursuant to the terms of that certain Third Amended and Restated Loan and Security Agreement dated as of the date hereof by and among Payor (as Administrative Agent (as defined therein) and as a lender thereunder), Navarro Borrower, certain subsidiaries

and affiliates of Epic party thereto as guarantors, the several entities from time to time party thereto as lenders (the "Navarro Lenders"; together with the Epic Lenders and Shipyard Lenders, collectively, the "Lenders") (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Navarro Loan Agreement"; together with the Epic Loan Agreement and Shipyard Loan Agreement, collectively, the "Loan Agreements"). As used herein "Effective Date" shall mean July 22, 2019. For the avoidance of doubt, the outstanding balance of the Junior Loans set forth herein shall be deemed to be outstanding as of the Effective Date, and interest shall begin to accrue thereon on the Effective Date.

2. ***Payments***. The principal amount of this Note, and all unpaid interest accrued thereon ("Outstanding Amount"), shall be payable at the principal offices of Agent or the Noteholders or by mail to the registered address of Agent (i) immediately after a Default (as defined below); or (ii) if not previously paid in full, on July 21, 2023 (the "Maturity Date"). Interest shall accrue on the outstanding principal amount (i) from and including the date hereof through and including the Maturity Date, at a rate of 8% per annum, and shall be paid in kind on the first day of each calendar month by adding the amount thereof to the Outstanding Amount (computed on the basis of the actual number of days elapsed and a year of 365 days). For the avoidance of doubt, any interest payable hereunder through the Maturity Date shall automatically accrue and be capitalized to the principal amount of this Note ("PIK Interest"), and shall thereafter be deemed to be a part of the principal amount of this Note, unless such interest is paid in cash. All PIK Interest that has accrued and has not been paid in cash shall be payable upon the earlier of a Default or the Maturity Date. The Payor shall not issue additional promissory notes to represent the PIK Interest, and, in lieu thereof, Agent or the Noteholders shall keep a ledger of the amount of PIK Interest that has accrued, which ledger shall be presumed to be correct.

3. ***Personal Guarantees***. The obligations under this Note are guaranteed, subject to the limitations set forth therein, under the terms of (a) the Second Amended and Restated Personal Guarantee dated June 14, 2019 made by Thomas M. Clarke, personally, and Thomas M. Clarke and Ana M. Clarke 100% JTWROS, for the benefit of Agent (the "Clarkes Personal Guarantee"), (b) the Personal Guarantee dated June 14, 2019 made by AMC for the benefit of Agent (the "AMC Personal Guarantee") and (c) the Amended and Restated Personal Guarantee dated April 5, 2019 made by David Wiley, an individual, and Agent (together with the Clarkes Personal Guarantee and the AMC Personal Guarantee, each a "Personal Guarantee" and, collectively, the "Personal Guarantees"). Agent and the Noteholders shall be entitled to all the benefits provided in the Personal Guarantees, provided that Agent and the Noteholders shall not be obligated to proceed first against any Personal Guarantee, but may proceed directly on this Note. In the event that Agent or the Noteholders proceed against any Personal Guarantee and the proceeds of same are inadequate to pay any amounts due on this Note, the undersigned shall remain liable for any deficiency thereof.

4. ***Acqua Liana Security Agreement***. This Note is secured under the terms of the Third Amended and Restated Security Agreement dated as of the date hereof made by and between Payor and Agent (the "Acqua Security Agreement"). Agent and the Noteholders shall be entitled to all the benefits of the security as provided in the Acqua Security Agreement, provided that Agent and the Noteholders shall not be obligated to proceed first against the Collateral (as defined in the Acqua Security Agreement), but may proceed directly on this Note.

2

In the event Agent proceeds against the Collateral (as defined in the Acqua Security Agreement) and the proceeds of same are inadequate to pay any amounts due on this Note, Payor shall remain liable for any deficiency.

5. ***Collateral Assignment of Junior Loans.*** This Note shall also be secured by a collateral assignment of all of Payor's right, title and interest in the Loan Agreements and all related loan documents, security documents or mortgages (collectively, the "Loan Documents") upon terms and conditions acceptable to Agent. Agent shall retain possession of all original Loan Documents unless and until this Note is paid in full.

6. ***Mandatory Prepayments under Junior Loans and Required Consent to Amendments or Enforcement.*** As further security for this Note, Payor hereby covenants, acknowledges and agrees that any amount payable to Payor under the Loan Purchase and Sale Agreement, any Loan Agreement or Loan Documents shall, in lieu of being retained by Payor, be paid to Agent for the benefit of the Noteholders as a mandatory prepayment of all advances, debts, liabilities, obligations, covenants, and duties of Payor under or in respect of this Note and any related documents. In addition, Payor hereby covenants, acknowledges and agrees that Payor shall not (i) amend, waive, modify or otherwise alter any Loan Agreement or Loan Documents to the extent such amendment, waiver, modification or other alteration would (A) increase, or extend the expiry of, the Commitment (as such term is defined in each Loan Agreement) of any Lender (or reinstate any such Commitment to the extent terminated pursuant to Section 8.02 of each Loan Agreement), (B) postpone or delay any date fixed by any Loan Agreement or any other Loan Document for any payment of principal, interest, fees or other amounts due to any Lender under any Loan Agreement or under any other Loan Document beyond the Maturity Date as set forth herein, or reduce the amount due to any Lender on any such date, (C) reduce the principal of any or all of the Term Loans (as such term is defined in each Loan Agreement) or other amounts payable to any Lender under any Loan Agreement or under any other Loan Document, (D) reduce the rate of interest on any Term Loan specified in any Loan Agreement below the rate of interest set forth in this Note with respect to the obligations hereunder, (E) release, compromise or subordinate all or any portion of the collateral securing the Obligations (as such term is defined in each Loan Agreement), except as otherwise expressly provided in the Loan Agreements or in any of the Collateral Documents (as such term is defined in each Loan Agreement), or amend the definition of the obligations secured by any of the Collateral Documents to narrow the scope of such obligations so secured, and except for a subordination to liens existing as of the date hereof with respect to all or any portion of the collateral securing the Obligations, (F) release, compromise, subordinate or terminate any of the Guaranties (as such term is defined in each Loan Agreement) except as otherwise expressly provided in the Loan Agreements or in any of the Loan Documents, or (G) amend the definition of Maturity Date (as such term is defined in each Loan Agreement) to extend such date beyond the Maturity Date (as such term is defined in this Note), or (ii) assign or transfer its rights under the Loan Agreements or the Loan Documents, in each case without the express written consent of Agent, unless and until this Note has been paid in full.

7. ***Default***. The following shall constitute a "Default" under this Note: (i) if the Payor fails to make any payment of principal or interest due and payable under the terms of this Note, (ii) any breach of any term, condition, representation or warranty under any Personal Guarantee by the applicable Guarantor (as defined therein), (iii) any breach of any term,

condition, representation, warranty or covenant under the pledge or collateral assignment of the Loan Agreements and Loan Documents, (iv) any breach of any term, condition, representation, warranty or covenant by Payor pursuant to the Acqua Security Agreement or the Loan Purchase and Sale Agreement, (v) any breach by Payor of any term, condition, representation, warranty or covenant contained herein, (vi) if, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors (a "Bankruptcy Law"), Payor shall (a) commence a voluntary case or proceeding; (b) consent to the entry of an order for relief against it in an involuntary case; (c) consent to the appointment of a trustee, receiver, assignee, liquidator, or similar official; (d) make an assignment for the benefit of its creditors; (e) admit in writing its inability to pay its debts as they become due, (f) if a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (i) is for relief against Payor in an involuntary case or (ii) appoints a trustee, receiver, assignee, liquidator, or similar official for Payor or substantially all of Payor's assets or properties or (iii) an "Event of Default" occurs under Section 8.01(a), 8.01(f) or 8.01(g) any of the Senior Loan Agreements (as defined below) or any acceleration of the Obligations (as defined in each Senior Loan Agreement) shall occur.  Upon the occurrence and continuance of a Default, Payor is responsible for any and all fees, costs and expenses, including legal fees, in connection with enforcement efforts or actions by the White Oak Lenders and Agent.

8. **_Exchange_**.  Upon (i) the payment in full of the Obligations under that certain Amended and Restated Loan and Security Agreement, dated as of the date hereof, as amended, restated, supplemented or otherwise modified from time to time, by and among Epic, certain of Epic's subsidiaries and affiliates from time to time party thereto, and White Oak Global Advisors, LLC, in its capacity as agent thereunder, and the lenders from time to time party thereto, as it has been and may be hereinafter amended, restated or modified from time to time (the "Senior Epic Loan Agreement", and together with each of the other agreements, instruments or documents delivered in connection therewith, the "Senior Epic Loan Documents") and the termination the Senior Epic Loan Documents, (ii) the payment in full of the Obligations under that certain Amended and Restated Loan and Security Agreement, dated as of the date hereof, as amended, restated, supplemented or otherwise modified from time to time, by and among Shipyard Borrower, certain of Epic's subsidiaries and affiliates, and White Oak Global Advisors, LLC, in its capacity as agent thereunder, and the lenders from time to time party thereto, as it has been and may be hereinafter amended, restated or modified from time to time (the "Senior Shipyard Loan Agreement", and together with each of the other agreements, instruments or documents delivered in connection therewith, the "Senior Shipyard Loan Documents") and the termination the Senior Shipyard Loan Documents, and (iii) the payment in full of the Obligations under that certain Amended and Restated Loan and Security Agreement, dated as of the date hereof, as amended, restated, supplemented or otherwise modified from time to time, by and among Navarro Borrower, certain of Epic's subsidiaries and affiliates, and White Oak Global Advisors, LLC, in its capacity as agent thereunder, and the lenders from time to time party thereto, as it has been and may be hereinafter amended, restated or modified from time to time (the "Senior Navarro Loan Agreement", and together with each of the other agreements, instruments or documents delivered in connection therewith, the "Senior Navarro Loan Documents") (the Senior Epic Loan Agreement, the Senior Shipyard Loan Agreement, and the Senior Navarro Loan Agreement, collectively, the "Senior Loan Agreements") and the termination the Senior Navarro Loan Documents, Agent shall have the right, but not the

obligation, to exchange this Note at par (and without premium) for all (but not less than all) of the Obligations under the Loan Agreements (the "Exchange").

Immediately effective upon the exchange of this Note (such date, the "Exchange Date"), (a) this Note shall be cancelled and shall be of no further force and effect, except, to the extent any provision hereof expressly survives such termination or cancellation, (b) Payor shall cease to be a Lender under the Loan Agreements, (c) Payor shall resign as Administrative Agent under the Loan Agreements as permitted by Section 9.06 of each Loan Agreement and shall cease to be Administrative Agent thereunder, (d) White Oak Global Advisors, LLC shall hereby be appointed as successor Administrative Agent under the Loan Agreements in accordance with Section 9.06 thereof, (e) each Noteholder shall become a Lender under the Loan Agreements, and (f) the Personal Guarantees (solely with respect to the Note) and the Acqua Security Agreement shall be of no further force and effect, except, to the extent any provision thereof expressly survives such termination or cancellation.

In connection with the Exchange, Payor agrees to enter into and deliver to Agent and the Noteholders on the Exchange Date, as a condition to closing, a fully-executed assignment agreement substantially in the form annexed to each Loan Agreement as Exhibit A thereto. Administrative Agent under each Loan Agreement shall assume complete responsibility for the servicing and administration under each Loan Agreement, including, but not limited to, (a) succeeding to and becoming vested with all of the rights, powers, privileges and duties of the Administrative Agent thereunder, (b) the collection of all payments thereunder, and (c) taking such actions on each Lender's behalf and to exercise such powers as are delegated to the Administrative Agent by the terms of each Loan Agreement, together with such actions and powers as are reasonably incidental thereto. Payor shall be discharged from all of its duties and obligations under each Loan Agreement and the other Loan Documents (if not already discharged therefrom as provided in Section 9.06 of each Loan Agreement).

9. *Waivers.* Payor hereby waives demand for payment, presentment, protest, notice of protest and non-payment, or other notice of default, notice of acceleration and intention to accelerate, and agrees that Payor's liability under this Note shall not be affected by any renewal or extension in time of payment hereof, or in any indulgences, or by any release or change in any security for the payment of this Note, and hereby consents to any and all renewals, extensions, indulgences, release or changes, regardless of the number of such renewals, extensions, indulgences, releases or changes.  No waiver by any Holder of any of its rights and remedies hereunder or under any other document evidencing or securing this Note or otherwise shall be considered a waiver of any other subsequent right or remedy of any Holder, and no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any right or remedy of any Holder.

10. ***GOVERNING LAW***.  **THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS (OTHER THAN CONFLICT LAWS) OF THE STATE OF NEW YORK.  THE PARTIES HERETO HEREBY (I) CONSENT TO THE PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK IN CONNECTION WITH ANY CONTROVERSY RELATED TO THIS NOTE; (II) WAIVE ANY ARGUMENT THAT VENUE IN ANY SUCH FORUM IS NOT CONVENIENT,**

**(III) AGREE THAT ANY LITIGATION INITIATED BY HOLDERS OR PAYOR IN CONNECTION WITH THIS NOTE MAY BE VENUED IN THE STATE OR FEDERAL COURTS LOCATED IN THE CITY, COUNTY AND STATE OF NEW YORK; AND (IV) AGREE THAT A FINAL JUDGMENT IN ANY SUCH SUIT, ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.**

11.  *WAIVER OF JURY TRIAL.* **THE PARTIES HERETO EACH HEREBY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING WHICH PERTAINS DIRECTLY OR INDIRECTLY TO THIS NOTE, ANY ALLEGED TORTIOUS CONDUCT BY THE PARTIES HERETO OR WHICH, IN ANY WAY, DIRECTLY OR INDIRECTLY, ARISES OUT OF OR RELATES TO THE RELATIONSHIP BETWEEN THE PARTIES HERETO.**

(Remainder of Page Intentionally Left Blank)

**IN WITNESS WHEREOF,** the Payor has caused this Note to be executed as of the date first above written.

PAYOR:  **ACQUA LIANA CAPITAL PARTNERS, LLC**, a Texas limited liability company

By: _/s/ Thomas M. Clarke_____
Name: Thomas M. Clarke
Title:  Authorized Signatory

*[Signature Page to Third Amended and Restated Promissory Note]*

## **EXHIBIT A**

| **LENDER** | **TOTAL AMOUNT OUTSTANDING** |
|---|---|
| ASRS | $19,342,476.73 |
| E-OC | $1,704,206.55 |
| PINN | $33,276,461.49 |
| SJFD | $3,148,465.68 |
| SJPF | $3,148,465.68 |
| TEAMSTERS | $19,295,868.05 |
| WO NDT | $12,441,020.89 |
| WOFI C | $10,078,906.09 |
| WOSF REV | $22,392,099.08 |
|  | Total = **$124,827,970.24** |

*Exhibit A*